**James Calvin JONES, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 59335.**

Court of Criminal Appeals of Texas, Panel No. 2.

Oct. 22, 1980.

Rehearing Denied Dec. 9, 1981.

Arch C. McColl, Dallas, for appellant.

Henry Wade, Dist. Atty., Steve Wilensky and Dan Garrigan, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Alfred Walker, Asst. State's Atty., Austin, for the State on rehearing.

Before DOUGLAS, ROBERTS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

This is an appeal from a conviction for retaliation, denounced by V.T.C.A. Penal Code, § 36.06. The trial court assessed punishment at five years.

The evidence reflects that pursuant to a telephone call from appellant in Dallas on June 16, 1977, appellant's estranged wife, Glenda Jones, left Fort Worth and the two met at the Continental bus station in Dallas at approximately 1:30 p.m. They walked into the station cafeteria and sat down. The restaurant manager, Catherine Bonds, testified that appellant was speaking loudly, using profane language, so she asked him to "watch his language," whereupon appellant jumped out of his chair and slapped her, knocking her glasses off her face.

Glenda Jones arose to leave and appellant grabbed her, hit her across the face, knocking her under a large booth and proceeded to exit the restaurant.[1] Mrs. Jones testified that she at this point heard "someone say

---

1. At some point during the altercation, a glass ashtray was broken and Glenda Jones's hair was showered with glass. Mrs. Jones testified that appellant picked the ashtray up off the table at the booth and broke it on her head. Appellant testified that as his wife fell under the booth, the ashtray was knocked off the table. Catherine Bonds testified that she knew an ashtray shattered, but she did not see appellant hit his wife with it. A police officer testified that when he first encountered Glenda Jones she had "knots on her forehead and a lot of glass in her hair and embedded in the skin up there on the forehead." Appellant's right hand was bleeding; he claimed that he had attempted to help his wife up and his hand was cut by the glass on the floor. Catherine Bonds denied that appellant had stopped to assist his wife.

Glenda Jones also asserted that appellant had taken about $50.00 from a pocket in her blouse: "Everything happened kind of fast, I'm not sure if he took it before, when he hit the lady I was ready to go and I'm not sure whether he took it before he hit me or—" At this point the prosecutor interrupted and changed the subject.

something" about the police having been called.[2] Catherine Bonds testified that she enlisted the company of a man and followed appellant down the street. Appellant, apparently recognizing Bonds, turned around and approached her whereupon she told him not to come back to her restaurant. Appellant turned back around, crossed the street and walked down the street away from the bus station.

Harold Henley, a traffic control police officer had just returned to his beat from having a patrol officer drive him and a prisoner to the jail, when a call came over the patrol car radio, reporting a "robbery in progress" at the Continental bus station. Henley started on foot toward the bus station, two and one half blocks away, but immediately saw a boy waiving his arms, pointing to appellant and saying that appellant "robbed the Continental bus station."[3] Henley stopped appellant who agreed to return to the bus station to check into the matter. Henley and appellant entered the back seat of the patrol car and were driven back to the bus station.

The stage was thus set for the commission of the alleged retaliation offense by appellant against Glenda Jones. From this point, the testimony clearly established that upon appellant's return to the bus station, Mrs. Jones and Catherine Bonds were talking to two other policemen, inside the building.

Appellant was yelling and cursing at the transporting officers and the women, whom he could see through glass doors. Officer Henley testified that appellant yelled:

"It was either that crazy bitch or that goofy bitch called the law or called the police on me and I'll kill her."[4]

Henley testified that he exited the patrol car and appellant leaned out the window, pointing at his wife,[5] stating, "Yeah, you goofy bitch, you're the one that did it." At this point, Henley and another officer stepped to the patrol car and rolled up the windows, then went inside to find out what happened. ·

Glenda Jones testified that she could see and hear appellant yelling outside. According to Mrs. Jones, "he made a few threats but exactly what he said I don't know. I guess I was kind of stunned but I know after they put him in the car he kept waiving his hands and pointing his finger . . . at myself, . . . then the officers rolled up the window . . . ."[6]

After the women had spoken with the officers, appellant was taken to the police station where he was charged with retaliation.[7]

The State stipulated that Glenda Jones had never before testified against appellant in any judicial proceeding, that she was not the party who instigated the instant proceeding against him, and that she had been subpoenaed by the State to testify. It was also agreed that Officer Henley told Mrs.

Appellant claimed that Mrs. Jones had earlier given him the money, that he had called her in the first place to ask her to wire it, but she had instead come to Dallas in person, to his surprise. Mrs. Jones did not explain the reason for her journey from Fort Worth.

2. The record nowhere reflects who it was that called the police.

3. Henley noticed that appellant's right hand was bleeding and observed approximately $50.00 in currency in his left hand.

4. Later, Henley recounted appellant's threat as, "That goofy bitch called the police on me and I'm going to kill her for it." Henley asserted that appellant was talking about his wife, but failed to explain what appellant said which lead him to that conclusion.

5. Again, the officer did not relate the manner in which he discerned that appellant was pointing to Glenda Jones, as opposed to Catherine Bonds, both of whom were standing some distance away, and inside, conversing with the two police officers.

6. Later in her testimony, Mrs. Jones stated that she heard "one statement that was through the window and then the windows were let up . . . .":

"I'm going to get you."

The witness conceded that appellant did not say why he was "going to get [her]."

7. Henley testified that appellant was also charged with assault upon his wife and Catherine Bonds at that time.

Jones that appellant had threatened to kill her, otherwise, she would not have known.

The salient portion of V.T.C.A. Penal Code, § 36.06, under which appellant was prosecuted reads:

"(a) A person commits an offense if he intentionally or knowingly . . . threatens to harm another by an unlawful act *in retaliation for or on account of the service of another as a* public servant, *witness,* or informant." [8]

The threshold question before us is one of statutory construction: within the context of the statute, what is the intent in proscribing retaliatory conduct against one who has served as a "witness?" [9]

V.T.C.A. Penal Code, § 1.05, instructs that our penal statutes are not to be strictly construed, but rather, "shall be construed according to the fair import of their terms, to promote justice and effect the objectives of this code." [10] We are further guided by Subsection (b) which directs:

"*Unless a different construction is required by the context,* Sections 2.01,[11] 2.02, 2.04, 2.05, and 3.01 through 3.12 of

the Code of Construction Act (Article 5429b–2, Vernon's Texas Civil Statutes) apply to the construction of this Code."

■ The State, without analysis or citation of authority, argues that the phrase contained in § 36.06(a), supra, "service . . . as a . . . witness," means one who witnesses a criminal offense—here the victim of it. See Black's Law Dictionary (Rev. Fourth Edition) 1778. The difficulty in that position is revealed at one point when the State, referring to threats of harm to Glenda Jones, finds itself alluding to her "*capacity*" as a witness. Yet, the statutory term is "service." The suggested construction, then, would include a beholder who has not, and may never, render service as a witness.[12] It is also alien to the context of the statute, to which we now turn.

As regards the "context" of the statute in issue, the Practice Commentary to § 36.06 notes that,

". . . [A] threat, conduct that is not itself unlawful, much less criminal (unless it constitutes an assault, a class C misde-

---

8. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

9. Unlike "witness," the penal code specifies meanings for "informant" [see § 36.06(b)], and "public servant" [see § 1.07(a)(30)].

10. V.T.C.A. Penal Code, § 1.02, entitled "Objectives of Code," provides in relevant part: "The general purposes of this code are to establish a system of prohibitions, [and] penalties. . . to *deal with conduct that unjustifiably* and inexcusably causes or threatens harm to those. . . public interests for which state protection is appropriate. *To this end, the provisions of this code* are intended, and *shall be construed, to achieve the following objectives:*

\* \* \* \* \* \*

(2) by definition and grading of offenses *to give fair warning of what is prohibited* and of the consequences of violation;

(3) to prescribe penalties that are *proportionate to the seriousness of offenses* and that permit recognition of differences in rehabilitation possibilities among individual offenders;

(4) *to safeguard conduct that is without guilt* from condemnation as criminal;

(5) to guide and *limit the exercise of official discretion in law enforcement* to prevent

arbitrary or oppressive treatment of persons accused or convicted of offenses; and

(6) to *define the scope of state interest in law enforcement* against specific offenses and to systematize the exercise of state criminal jurisdiction."

11. Section 2.01 of the Code of Construction Act provides:

"Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

12. Any reliance on the Explanatory Comment following § 36.06, 3 Branch's Texas Annotated Penal Statutes, Third Edition, 27, is misplaced. That "informant" *is* specially defined for purposes of § 36.06 to require that one's communication to the government be "in connection with any governmental function" does not necessarily mean that "service of the public servant or witness is *not* limited to governmental functions." Indeed, the general definition of public servant, V.T.C.A.Penal Code, § 1.07(a)(36), and the suggested form of charge, 3 Branch's 28, belies the "explanation."

meanor, under Section 22.01) *becomes criminal* if it is directed toward a public servant, informant, or a witness in *response to* the *'victims' activity* in an *official capacity.* ('Witness' is not defined, but presumably the term will be construed to mean only *one who testifies before an official proceeding*, cf. Section 36.05 [13]; otherwise location of the 'witness' part of the offense in this chapter would be inappropriate.) The overbreadth of Section 36.06 is particularly objectionable since it has been graded a felony."

To accept a broader construction would at once defeat the legislative objectives in proscribing the offense of retaliation [see n. 10 *ante*], and render the provision relating to retaliation against a witness impermissibly vague. Surely there is nothing in the context of § 36.06 which requires us to construe it differently [14] than upon the presumptions that "compliance with the Constitutions of this State and the United States is intended; the entire statute is intended to be effective; and, a just and reasonable result is intended." Article 5429b–2, supra, § 3.01(1)–(3).

█ Furthermore, considering the requirement of § 36.06, supra, that the proscribed conduct be "in retaliation for or on account of the *service* of another as a . . . witness," [15] we must construe "witness" to mean, one who has testified in an official proceeding. Accord *Ulmer v. State*, 544

S.W.2d 414 (Tex.Cr.App.1976) (and particularly, Odom, J., concurring).

█ For all the reasons expressed, we reverse the conviction for evidentiary insufficiency and order the entry of a judgment of acquittal.

DOUGLAS, Judge, dissenting.

The indictment in this cause alleged that Jones did

" . . . knowingly and intentionally threaten to harm Glenda Jones, a *witness*, by an unlawful act, namely, threatening to kill, in retaliation for and on account of the service of Glenda Jones, a *witness* in a criminal assault upon her, the said Glenda Jones by the above named defendant, . . ." (Emphasis supplied)

The evidence, viewed in the light most favorable to the verdict, shows that appellant, having called the complainant, his former common-law spouse, to arrange a meeting, did meet her at a bus station. They went into the cafeteria of that station, where, after a brief argument with the woman who manages the cafeteria, appellant slapped the manager and the complainant got up to leave.

Appellant then hit Glenda Jones over the head with a glass ashtray which shattered, cutting appellant's hand and showering Glenda Jones' hair with glass.

Appellant fled and was apprehended nearby by policemen who had been called to

---

13. Section 36.05, supra, provides:

"(a) A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a *witness* or prospective witness *in an official proceeding* or coerces a witness or prospective witness *in an official proceeding*:

(1) to testify falsely;

(2) to withhold any testimony, information, document or thing;

(3) to elude legal process summoning him to testify or supply evidence; or

(4) to absent himself from an official proceeding to which he has been legally summoned.

(b) A *witness* or prospective witness *in an official proceeding* commits an offense if he knowingly solicits, accepts, or agrees to accept any benefit on the representation or understanding that he will do any of the

things specified in Subsection (a) of this section.

(c) *An offense under this section is a felony of the third degree."*

14. See § 1.05(b), supra, quoted *ante* at p. 54.

15. The retaliation must be "for or on account of the *service* of another . . . .;" when commonly used as a noun in this context the word means "the act of serving"—here, as a public servant or witness. Ordinarily the way one *serves* as a witness is by testifying; before then, while one may personally see or perceive a thing and thereby *be* a beholder, spectator or eyewitness in one dictionary sense of witness, still that one has not yet *served.* This element of retaliation is that one serve as, not that one *is,* a witness.

investigate a robbery at the bus station. In his hand was found $50, the amount of money which Glenda Jones discovered missing from her breast pocket after the assault.

After being returned to the bus station, appellant shouted threats and insults from the sidewalk by the police car, and later from the back seat of the car. Glenda Jones, who was standing nearby reporting her knowledge of the assaults upon the manager and herself, heard him say he was "going to get [her]." Officer Harold Henley heard appellant say, "That goofy bitch called the police and I'm going to kill her for it," and saw appellant lean out the window, point at Glenda Jones and say, "Yes, you goofy bitch, you're the one." Those statements are the gravamen of this cause.

Appellant contends that "witness", as contemplated by Section 36.06, means a witness *in an official proceeding*, and that, because the State offered no proof that Glenda Jones was a witness in an official proceeding, the evidence was insufficient to support the judgment.

In *Ulmer v. State*, 544 S.W.2d 414 (Tex. Cr.App.1976), we stated, quoting from the Explanatory Commentary to Section 36.06, Retaliation, of Volume 3, Branch's Texas Annotated Penal Statutes, Third Edition:

"The purpose of this section is to raise the punishment for other offenses, such as assaults (Sec. 22.02) when *the conduct is retaliatory.* The section is not limited to criminal matters, but sufficiently broad to cover all public servants, witnesses, and informants involved in legislative, administrative, and other *proceedings.*

"It should be noted that the service of a public servant or *witness is not limited to governmental functions* while the informant is by virtue of the definition in Subsection (b)." (Emphasis added)

1. Sec. 36.05 reads in pertinent part:
   (a) A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a

We went on to hold that, as applied to the facts in that case, the term "witness" included one who testified before a federal grand jury because the term was not limited by the statute and because the gravamen of the offense was the retaliatory act committed or threatened.

Because the term "witness" is not defined in the Penal Code, we must rely on its commonly accepted meaning in applying it to the facts of the case. Black's Law Dictionary, 4th Edition, defines witness as both:

(1) "In general, one who, being present, personally sees or perceives a thing, a beholder, spectator, or eyewitness. (citations omitted)

(2) "One who testifies to what he has seen, heard, or otherwise observed." (Citations omitted)

We should hold that, as applied to the facts of the instant case, the term "witness" includes one who perceives an event and relays the information gained to the police.

The judgment should be affirmed.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

W. C. DAVIS, Judge.

On original submission, this Court in a panel opinion held the term "witness" as used in Sec. 36.06, V.T.C.A.Penal Code means one who has testified in an official proceeding.

In its motion for rehearing the State contends that had the legislature meant to limit the term "witness" to the meaning given in the panel opinion, such limiting terminology would have been included in Sec. 36.06 as it was in Sec. 36.05.[1] The State, arguing that an eyewitness to a crime who is yet to become a testifying witness should be afforded the protection of the statute as he is in a higher degree of vulnerability to retaliatory threats than the

witness or prospective witness *in an official proceeding* or coerces a witness or prospective witness *in an official proceeding...*" (Emphasis added)

ordinary citizen, urges that we adopt the dissenting opinion's construction of the term "witness" as one who perceives an event and relays the information gained to the police.

Upon consideration of the State's arguments, we remain convinced that the panel on original submission reached the proper result. In response to the State's arguments, we point out that Sec. 36.06 as written provides protection for those "who relay information gained to the police," by including informants as a class of individuals protected from retaliation. Furthermore, had the legislature meant to include "prospective witnesses" in the coverage of this statute, such terminology could have been included as in the preceding statute, Sec. 36.-05.

The State's motion for rehearing is denied.