Serlee BENSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 60130.

Court of Criminal Appeals of Texas.

March 10, 1982.

Rehearing Denied May 12, 1982.

Second Rehearing Denied
Dec. 21, 1983.

W.V. Dunnam, Jr., Waco, for appellant.

Felipe Reyna, Dist. Atty., and Randall L. Rogers, Asst. Dist. Atty., Waco, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P.J., and ROBERTS and ODOM, JJ.

### OPINION

ODOM, Judge.

This is an appeal from a conviction for burglary. Punishment was assessed at nine years.

Initially appellant attacks the sufficiency of the evidence to sustain his conviction. The specific ground argued is that there is insufficient evidence of his "intentionally

and knowingly entering a habitation without the effective consent of Virgie Harris, the owner, having the intent to commit the felony offense of retaliation, there being no evidence of such intent." The State, in its brief, agrees with, and the record supports, appellant's assessment of facts crucial to the disposition of this contention:

"The State wholeheartedly agrees with the following statement made by Appellant at the bottom of page two of his brief:

" 'The only evidence and the only contention of the State as to the intent of the Defendant is that he intended at the time of entry to coerce his ex-wife, Mary Benson, a private citizen, to drop assault charges against him in which she was the complainant.' "

The indictment in the instant case alleged that appellant "did then and there intentionally and knowingly enter a habitation without the effective consent of Virgie Harris, the owner, *having intent to commit the felony offense of retaliation.*" (Emphasis added.) See V.T.C.A., Penal Code Sec. 36.06(a). The jury was charged that a "person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act *in retaliation for or on account of the service of another as a witness.*" (Emphasis added.)

Hence the issue before us is whether one who intends "to coerce . . . a private citizen to drop assault charges pending against him" possesses the required intent to commit the felony offense of retaliation. Stated more narrowly, is this "private citizen complainant," who had not testified in any official proceeding, a "witness" as that term is used in the Retaliation statute, V.T.C.A., Penal Code Sec. 36.06?[1]

We begin our analysis by noting that the legislature has not defined the word "wit-

ness" for our purposes even though commentators have noted the need for such a definition. See Searcy & Patterson, *Practice Commentary,* 4 V.T.C.A., Penal Code 22 (Vernon 1974) (term "witness" undefined but *presumably* means "only one who testifies before an official proceeding"). We also note that the term "witness" is used in only two offenses set out in Chapter 36, Bribery and Corrupt Influence, which is in Title 8, Offenses Against Public Administration, in the Texas Penal Code.

The first of these offenses in Title 8, Chapter 26, is V.T.C.A., Penal Code Sec. 36.05, "Tampering with Witnesses" which provides:

"(a) A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding or coerces a witness or prospective witness in an official proceeding:

"(1) to testify falsely;

"(2) to withhold any testimony, information, document, or thing;

"(3) to elude legal process summoning him to testify or supply evidence; or

"(4) to absent himself from an official proceeding to which he has been legally summoned.

"(b) A witness or prospective witness in an official proceeding commits an offense if he knowingly solicits, accepts, or agrees to accept any benefit on the representation or understanding that he will do any of the things specified in Subsection (a) of this section.

"(c) An offense under this section is a felony of the third degree."

It is significant that Subsections (a) and (b) of this statute carefully proscribe certain conduct against "*witnesses*" and "*prospective witnesses.*" Hence the legislature has

---

1. This statute, in its entirety, provides:

"(a) A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another as a public servant, witness, or informant.

"(b) For purposes of this section, 'informant' means a person who has communicated information to the government in connection with any governmental function.

"(c) An offense under this section is a felony of the third degree."

indicated that there is a difference between a "witness" and a "prospective witness."

The other pertinent offense, Sec. 36.06, supra, set out in footnote 1, in contrast, proscribes certain conduct against "witnesses," but *not* "prospective witnesses."

In *Ulmer v. State,* 544 S.W.2d 414, 415, Tex.Cr.App., we held that the word "witness" applies "to *one who testifies* before a federal grand jury or federal official proceeding in the same manner as it would apply to *one who testifies* in a State court or before a State grand jury or other official State governmental agency." (Emphasis added.) The concurring opinion reasoned that "witness" meant "*one who testifies in an official proceeding.*" *Ulmer v. State,* supra at 416. (Emphasis added.) Recently we held that "witness" indicated "one who has testified in an official proceeding." *Jones v. State,* 628 S.W.2d 51 (1981).

In light of the fact that the legislature has, by statute, differentiated offenses against "witnesses" only and "witnesses and prospective witnesses," and after a thorough consideration of our opinions in *Ulmer* and *Jones,* we hold that under Sec. 36.06(a), supra, the term "witness" means "one who *has* testified in an official proceeding," and does not include a mere "prospective witness."

Therefore, we must sustain appellant's contention that the evidence adduced at trial was insufficient to show that he possessed the requisite intent to act "in retaliation for or on account of the services of another *as a witness.*" (Emphasis added.) The complainant, Mary Benson, simply was not, under the facts of this case, a *witness*

before an official proceeding.[2] The record clearly indicates that she was only a *prospective witness* against her ex-husband in a pending assault charge.

The judgment is reversed and we order the entry of a judgment of acquittal.

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

On original submission a unanimous panel of the Court held the evidence was insufficient to support the jury's verdict that appellant committed the offense of burglary of a habitation with intent to commit the "felony offense of retaliation," which was in turn authorized by the court's abstract charge upon a finding that such intended retaliation was "for or on account of the service of another as a *witness.*"[1] The State conceded the evidence adduced did not support such a finding of fact by the jury.

On motion for rehearing, however, the State's Attorney contends the evidence was adequate to support the *indictment* allegation that appellant intended to commit the offense of "retaliation"—so long as the general term, "retaliation," is specifically narrowed to the alternative theory in which the intended victim is an "*informant*" as opposed to "*witness.*"[2] Therefore, goes the argument, the error in the case is merely a matter of an erroneous *charge* which was drafted on a theory not supported by the evidence and, as such, presents only "trial

---

2. We also note that under the facts of this case, appellant possibly could have been prosecuted for burglary with intent to commit retaliation "for or on account of the service of another as a[n] ... *informant.*" Since an "informant" is one who "*has communicated information* to the government *in connection with any governmental function,*" see V.T.C.A., Penal Code Sec. 36.06(b) (emphasis added), one who has filed a criminal complaint and has necessarily communicated with the police and district attorney in connection with the complaint is an "informant" entitled to protection under Sec. 36.-

06(a), supra. This theory, however, was not pursued in this case.

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. See opinion on original submission wherein it is fully explicated that V.T.C.A.Penal Code, § 36.06(a) proscribes retaliation against another on account of service as a "public servant," "witness," *or* "informant," each of which has a distinct technical meaning.

error" which does not necessitate the entry of a judgment of acquittal.

A review of the record and the transcription of the court reporter's notes reveals that all of appellant's specially requested charges were denied, and all of his objections to the charge given were overruled. Thus, there is no indication that the instructions ultimately given to the jury were done so at the instance of appellant. Furthermore, the record reflects no objection was lodged by the State to the portion of the court's charge now complained of on rehearing; neither did the State request that portion of the charge be limited only to (or expanded to include) the theory of "retaliation" that party contends was the only one supported by the evidence. And finally, neither does the State argue the court's charge was fundamentally erroneous—and clearly, it was not. See *Robinson v. State*, 596 S.W.2d 130 (Tex.Cr.App.1980), and cf. *Robinson v. State*, 553 S.W.2d 371 (Tex.Cr. App.1977).

While the State today advances a provocative argument, it is apparent that the State also acquiesced at trial to the court's unnecessary limitation of the legal theory in issue, to one which was not established by that party's evidence. Thus, as a procedural matter, we believe the State's complaint is behindhand: the trial is over, the verdict in, the proverbial damage done.

We therefore hold that, as a matter of procedure, the State may not avoid the consequences of its lapse under the circumstances presented.

Because a verdict of "guilty" necessarily means the jury found evidence of that on which it was authorized to convict, the *evidence* is measured by the *charge* which perforce comprehends the indictment allegations.[3] It follows that if it does not conform to the charge, it is insufficient as a matter of law to support the only verdict authorized.[4] Even if we agreed with the State that the court's instruction constituted reversible error in a vacuum, it is now settled that, though finding reversible "trial error," the Federal Constitution compels us nevertheless to review the sufficiency of the evidence, if raised by the appellant. *Thompson v. State*, 621 S.W.2d 624 (Tex.Cr. App.1981); *Penagraph v. State*, 623 S.W.2d 341 (Tex.Cr.App.1981); *Hooker v. State*, 621 S.W.2d 597 (Tex.Cr.App.1981); *Rains v. State*, 604 S.W.2d 118 (Tex.Cr.App.1980); *Swabado v. State*, 597 S.W.2d 361 (Tex.Cr. App.1980). Ironic indeed is the observation that the State's Attorney by necessity has reviewed the evidence and found it deficient, *in order to* raise his contention that the charge contained error at all; yet we are nevertheless asked to ignore that established deficiency!

Under the court's charge, the only verdict authorized in view of the evidence was "not guilty." Upon scrutiny the State's contention on rehearing is tantamount to an argument that, had the jury returned the only verdict authorized, the State should be given an opportunity to correct the omission in the trial court's charge upon a retrial.[5] Patently, the State may not do on motion for rehearing what the Constitution and laws of this State prohibit it from doing upon the return of a "not guilty" verdict.[6]

Finding no "trial error" of which the State may at this point in the process avail itself to the end of a more desirable result, we must conclude the disposition of this cause made on original submission was correct. Cf. *Thornton v. State*, 601 S.W.2d 340 (Tex.Cr.App.1980) (Opinion on motions for rehearing).

The State's motion for rehearing is accordingly overruled.

DALLY and McCORMICK, JJ., dissent.

---

3. V.A.C.C.P., Articles 1.15; 36.13; 38.04; 36.-14; 38.03; 37.07, § 2(a); 37.07, § 1(a) and (b); 37.01; 37.12; 42.01, § 1(4)–(8); and 1.04.

4. *Ibid.;* and 40.03(9), V.A.C.C.P.

5. And indeed, an error for which the State was as responsible as anyone the first time around.

6. See Article V, § 26 Tex. Const.; Articles 40.-02; 44.01, V.A.C.C.P.; see also *Faulder v. Hill*, 612 S.W.1d 512 (Tex.Cr.App.1980) (Opinions on original submission).

Before the court en banc.

## OPINION ON STATE'S SECOND MOTION FOR REHEARING

W.C. DAVIS, Judge.

On original submission a unanimous panel of this Court held the evidence insufficient to support the jury's verdict that appellant committed the offense of burglary of a habitation with intent to commit the felony offense of retaliation. See V.T.C.A., Penal Code, § 36.06. The jury's verdict was authorized by and based upon the court's charge which stated in the definitional portion of the charge: "A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of *the service of another as a witness.*"[1]

The State's motion for leave to file a motion for rehearing was granted. The motion for rehearing was denied on the merits, this Court specifically rejecting the State's argument that the evidence need only be sufficient to support the general allegations in the indictment and that the court's charge which defined the victim as a "witness" was error. This Court further stated that "[b]ecause a verdict of 'guilty' necessarily means the jury found evidence of that on which it was authorized to convict, the *evidence* is measured by the *charge* which perforce comprehends the indictment allegations. It follows that if it does not conform to the charge, it is insufficient as a matter of law to support the only verdict authorized."

The State's Prosecuting Attorney filed a motion for leave to file a second motion for rehearing arguing the identical contentions rejected in the first motion for rehearing. The motion for leave to file was granted. Cf. Tex.Cr.App.R. 309(f).

We once again address the issue of whether the reviewing court must look to the indictment—as the State contends, or to the charge—to determine the sufficiency of the evidence.

An indictment serves two functions. First, it gives the court jurisdiction over the case. *American Plant Food Corp. v. State,* 508 S.W.2d 598, 603 (Tex.Cr.App. 1974). Second, it satisfies due process requirements by providing notice to a defendant of that offense with which he is charged. *Sattiewhite v. State,* 600 S.W.2d 277, 282 (Tex.Cr.App.1979) (opinion on rehearing 1980). The State is bound by the allegations it sets out in the indictment and it must prove *those* allegations, because of due process requirements, beyond a reasonable doubt. *Taylor v. State,* 637 S.W.2d 929, 930 (Tex.Cr.App.1982); *Moore v. State,* 531 S.W.2d 140, 142 (Tex.Cr.App.1975).

In order to satisfy the dual requirements of jurisdiction and sufficient notice to a defendant, the indictment must allege all the necessary elements of the offense. One "exception" to this rule is that a burglary indictment, as in this case, must allege the specific elements of burglary, but will satisfy due process to the extent that it is not rendered fundamentally defective by merely alleging the intent element with the phrase "with intent to commit theft (or a particular felony)" without setting out the elements of theft or of that felony.

The indictment is directed to the defendant. The charge, on the other hand, is directed to the jury. The charge must set out all the essential elements of the offense. *Jackson v. State,* 633 S.W.2d 897 (Tex.Cr.App.1982); *Zuckerman v. State,* 591 S.W.2d 495 (Tex.Cr.App.1979). The charge should correspond with and incorporate the allegations in the indictment. *Jackson,* supra; *Hardie v. State,* 588 S.W.2d 936 (Tex. Cr.App.1979); see also *Sattiewhite v. State,* supra.

The purpose of the charge is to inform the jury of the law applicable to the case. The judge must deliver to the jury a written charge "distinctly setting forth the law applicable to the case." Art. 36.14, V.A.C.C.P. Therefore, it follows that the

---

1. Emphasis added.

jury must be informed of the individual elements that constitute the offense for which a defendant is being tried. For example, in the present case the indictment alleged in pertinent part: "[Appellant] did then and there intentionally and knowingly enter a habitation without the effective consent of Virgie Harris, the owner, having intent to commit the felony offense of retaliation." The elements of retaliation were not set out. Before the jury could fairly convict appellant they had to be informed of the elements that constitute the offense of retaliation. Clearly the jury must know what is alleged to have been intended before they can pass upon the question of the existence of the alleged intent.

■ The statutory elements of an offense must be set out either in the application paragraph or in the definitional portion of the charge. *Lewis v. State,* 656 S.W.2d 472 (Tex.Cr.App.1983); *Evans v. State,* 606 S.W.2d 880 (Tex.Cr.App.1980). The court in this case properly—and without objection— informed the jury that the offense of retaliation is committed if a person "intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another as a *witness.*" [2]

The charge in this case contains no error. It informs the jury of the State's theory of what the appellant did. It corresponds to the allegations in the indictment and it informs the jury of the law, including those individual elements which must be proved by the State to constitute the offense of burglary with intent to commit retaliation, the State's theory of the case, and the burden of proof in which the State acquiesced.

The charge states that "in matters of law you must be governed by the instructions, definitions, and the rulings of the Court." The jury evaluates the evidence and applies it to the instructions and definitions given in the charge. A jury determines guilt or innocence based upon that charge. A defendant is found guilty or not guilty by a jury, based upon the evidence adduced *as viewed in light of the charge.*

■ We turn now to the sufficiency issue. This case was reversed on original submission because the evidence was insufficient to show that appellant "possessed the requisite intent to act 'in retaliation for or on account of the services of another *as a witness.*'" This Court, relying on *Ulmer v. State,* 544 S.W.2d 414 (Tex.Cr.App.1976) and a more recent case not decided at the time of appellant's trial, *Jones v. State,* 628 S.W.2d 51 (Tex.Cr.App.1980), held that the term "witness" means "'one who *has* testified in an official proceeding,' and does not include a mere 'prospective witness.'" The record shows that the victim, Mary Benson, was a prospective witness at the time and was not, under the facts of the case, a witness under Art. 36.06, V.T.C.A.

The State argues that, because the indictment simply alleged "... with intent to commit retaliation" and did not further define retaliation, the evidence is not insufficient because of the failure of the state's proof, but only because of the court's unnecessarily restrictive charge. The State contends that under *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) sufficiency of the evidence should be measured by the indictment alone and not by the charge; under the State's theory the evidence in this case is sufficient since the general allegation of "retaliation" in the indictment would include retaliation against a witness, informant or public servant and the evidence is sufficient to prove that Mary Benson was an "informant" under Art. 36.06. We do not agree with the State's fundamental premise.

■ The standard by which sufficiency is measured was established in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard must

---

**2.** Emphasis added.

be applied to the evidence and to a correct charge that corresponds to the indictment allegations. The verdict comes from the jury's determination of the evidence in light of the instructions and law given in the charge. The indictment is directed to the defendant for notice and jurisdiction requirements. It is the charge that "convicts."

Some cases have relied on the indictment to determine sufficiency, particularly when a variance or "extra" allegation is involved.

The variance problem is a due process issue and the "extra" allegation problem involves the charge. See *Ortega v. State,* —— S.W.2d —— No. 821–82, n. 11 (delivered September 14, 1983). Many cases discuss sufficiency without reference to either the indictment or the charge. Rather they discuss the elements of the offense and whether the evidence supports the statutory elements. A charge should contain the statutory elements so that the conviction is based on the law and on the jury's determination of the evidence as applied to that law.

Generally, all the essential elements of an offense are set out in the indictment. In burglary however, the intent element involves another offense which is not required to be set out by its elements, but can simply be defined in the charge. When that occurs, the only guide to the jury in determining what the essential elements of an offense are, is necessarily, the definition in the charge. The charge together with the proof and the indictment reflects the State's theory of the offense. The charge must define the offense so that the jury knows its essential elements.

The charge in this case was not erroneous. The application paragraph tracked the indictment exactly. A commonsense reading of the charge to determine if the State had met its burden and proved all the essential elements consistent with its theory of the case, meant that the jury would necessarily have to refer to the definition of the offense of retaliation in order to determine if all elements of that offense had been proved. It appeared to all intents and purposes that the State's theory of retalia-

tion involved a "witness". The proof does not support a conviction under this theory.

In *Jason v. State,* 589 S.W.2d 447, 452 (Tex.Cr.App.1979), we said that the "language of the verdict should be interpreted in light of the indictment and charge." *Jason* involved an improper verdict form. This Court affirmed the conviction in *Jason,* holding that all three—the verdict indictment and charge—should be examined together. See also *Chavez v. State,* 657 S.W.2d 146 (Tex.Cr.App.1983). The same theory applies to this case for sufficiency determination.' We hold that when a charge is correct for the theory of the case presented we review the sufficiency of the evidence in a light most favorable to the verdict by comparing the evidence to the indictment *as incorporated into the charge.*

There is an interaction between the indictment, proof and charge. The State shapes the indictment to charge a defendant with a particular offense. They then seek to prove all the elements of that offense. The next step is a sort of "codification" of the State's theory of prosecution, the particular statutory elements together with definitions, instructions, and defenses. The charge comprises these.

In the instant case the State did not object to the burden of proof placed on it by the trial court's instructions to the jury. There was nothing to suggest that the State's theory was anything but retaliation as directed to a "witness." Unfortunately for the State, the evidence was insufficient to support that theory, given this Court's interpretation of "witness." The State has failed to satisfy its burden of proof. See *Jones,* supra and *Sewell v. State,* 629 S.W.2d 42 (Tex.Cr.App.1982).

The United States Supreme Court in *Forman v. United States,* 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960); *Burks,* supra, and most recently in *Tibbs v. Florida,* 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1981) has stated that legal insufficiency "means that the government's case was so lacking that it should not have even been *submitted* to the

jury." *Burks,* 437 U.S. at 16, 98 S.Ct. at 2149. The Court went on to say:

> Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.

437 U.S. at 16, 98 S.Ct. at 2149.

The Supreme Court noted that legal insufficiency may not necessarily coincide with innocence. In other words insufficiency means that the State's case could be cured or satisfied only by the introduction of new evidence to prove, if possible, their theory of the case. *Forman,* 361 U.S. at 426, 80 S.Ct. at 487. In the present case a reading of the charge that presents the law of the case, together with the State's indictment demonstrates that the State was proceeding under an erroneous assumption that Mary Benson was a "witness." It is as if the State had charged one offense and proved another. The State would have to present additional evidence to show that Benson had testified in order to prove "witness." A reading of the charge and indictment as incorporated into the charge shows that the evidence is insufficient as a matter of law to support the jury's verdict and the conviction.

This case is analogous to a situation in which a proper indictment alleges the elements of burglary and alleges the intent element as "intent to commit theft." Since a jury charge authorizing a conviction must require the jury to find all the elements of the offense, *Evans,* supra, and *Thompson v. State,* 574 S.W.2d 103 (Tex.Cr.App.1978), and theft has several different sets of possible elements, the charge must set out one of those sets of theft elements. See *Ex Parte Cannon,* 546 S.W.2d 266 (Tex.Cr.App.1976) (opinion on rehearing 1977). If the State fails to object to a charge that defines theft in terms of elements of receiving stolen property and the evidence shows an unlawful appropriation from the owner, the conviction should be reversed for insufficient evidence if a jury convicts under such a

charge. The *only possible* interpretation of the indictment and charge is that the State's theory is burglary with intent to commit theft—theft by receiving stolen property. Therefore in viewing the evidence in terms of a proper charge incorporating the indictment, a reviewing court would be bound to find the evidence insufficient as a matter of law.

The State's second motion for rehearing is denied.

TEAGUE and MILLER, JJ., concur.

CLINTON, Judge, concurring.

The dissenting opinion is reminiscent of a recurring notion that a guilty verdict from an improperly charged jury may be upheld if somewhere in the court's charge the jury is allowed to find guilt "as set forth [or charged] in the indictment." But, as the Court stated in *Bradley v. State,* 560 S.W.2d 650 (Tex.Cr.App.1978):

> "Were this the law, there would never be any need for a charge beyond requiring the jury to find that the defendant committed the offense as set forth in the indictment. [Citations omitted]" *Id.,* at 652.

Implicit in the dissenting view is that the right of an accused to have a jury determine culpability beyond a reasonable doubt is satisfied once a verdict of guilty is returned—regardless of how egregiously erroneous was the court's charge in allowing it to do so—if on appeal a reviewing court finds from all the evidence that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, is cited, but carefully read it does support that view.

The context in which *Jackson v. Virginia,* supra, was decided must be recalled. Certiorari was granted to consider "under *In re Winship,* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ], a federal habeas corpus court must consider not whether there was *any* evidence to support a state-court conviction, but whether there was sufficient

evidence to justify a rational trier of facts to find guilt beyond a reasonable doubt." *Id.,* 443 U.S. at 313, 99 S.Ct. at 2785.[1] *Winship,* of course, established that "the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged,' 397 U.S., at 364 [90 S.Ct., at 1072] ...," *Id.,* 443 U.S., at 315, 99 S.Ct., at 2786.

In coming to its resolution of the issue, the Supreme Court rejected the dissenting view in the cause at bar:

> "The *Winship* doctrine requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also *require that the factfinder will rationally apply that standard to the facts in evidence.* 8. * * * Yet a properly instructed jury* may occasionally convict even when it can be said that no rational trier of fact could find guilty beyond a reasonable doubt.... * * * Under *Winship* ... it follows that when such a conviction occurs in a state trial it cannot constitutionally stand. * * *
>
> 8. The trier of fact in this case was a judge and not a jury. But this is of no constitutional significance. The record makes clear that the judge *deemed himself 'properly instructed.'*"

*Id.,* 443 U.S. at 317–318, 99 S.Ct. at 2788.

Then the Supreme Court made clear that its "rational trier of fact" standard assumed that the latter had been "properly instructed," *viz:*

> "After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must not be simply to determine *whether the jury was properly instructed,* but to determine whether the record evidence could reasonably support a finding of guilty beyond a reasonable doubt." *Id.,* 443 U.S. at 319, 99 S.Ct. at 2789.

In the instant case only the State suggested there was error in the charge of the court to the jury—but not until its motion for rehearing. Essentially it was that contention that the Court then decided. We concluded:

> "Finding no 'trial error' of which the State may at this point in the process avail itself to the end of a more desirable result, we must conclude the disposition of this cause made on original submission was correct."

In short, the Court determined that under the evidence and procedure imposed by the law of this State appellant is not guilty of that which the prosecution tried him.

The opinion of the Court on the State's unauthorized second motion for rehearing is correct, and I join it and the judgment of the Court.

McCORMICK, Judge.

The majority is correct in their analysis of the purpose of the indictment and the charge. It is true that the indictment gives the court jurisdiction over a case and provides notice to the defendant of that offense with which he is charged. It is also true that the purpose of the charge is to instruct the jury as to the law applicable to the case. Article 36.14, V.A.C.C.P. It is an important tool for the jury. However, the majority is in error when it asserts that a reviewing court is to judge the sufficiency of the evidence by looking at how the court charged the jury. This erroneous assertion is based on the false premise that when an appellate court is reviewing the sufficiency of the evidence it is looking to determine whether this particular jury was correct in the verdict it reached. That is not the premise on which sufficiency of the evidence is to be determined. The purpose of an examination as to sufficiency of the evidence is not to determine whether this particular jury erred in their verdict, but whether "a rational trier of fact" could

1. Emphasis by Supreme Court. All other emphasis is added throughout by the writer of this opinion unless otherwise indicated.

have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. In other words, has the State met the burden of proving the allegations made in their indictment against the defendant?[1]

The indictment in the instant case alleged in pertinent part that appellant

"... did then and there intentionally and knowingly enter a habitation without the effective consent of Virgie Harris, the owner, having intent to commit the felony offense of retaliation...."

The application paragraph of the jury charge tracked the language of the indictment:

"Now, if you believe from the evidence beyond a reasonable doubt that in McLennan County, Texas, on or about the 23rd day of January, 1978, Serlee Benson, did then and there intentionally and knowingly enter a habitation without the effective consent of Virgie Harris, the owner, having intent to commit the felony offense of retaliation, then you will find the defendant guilty of burglary of a habitation with intent to commit the felony offense of retaliation."

The abstract portion of the charge discussed retaliation as follows:

"A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another *as a witness.*" (Emphasis added)

The term "witness" was not defined. Neither was it defined in V.T.C.A., Penal Code, Section 36.06:

"(a) A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an un-

lawful act in retaliation for or on account of the service of another as a public servant, witness, or informant.

"(b) For purposes of this section 'informant' means a person who has communicated information to the government in connection with any governmental function.

"(c) An offense under this section is a felony of the third degree."

It is apparent that the abstract portion of the charge expanded on the allegations of the indictment by adding the phrase "as a witness." As I will point out later, I do not believe this was error. However, for the purposes of discussion, assuming the addition of this phrase was error, it was not the type of error envisioned in the law to mandate a judgment of acquittal. Rather, it is what has become known as "trial error," that is, error which renders a case reversible and ripe for a new trial. The United States Supreme Court in *Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978), recognized this distinction and included incorrect jury instructions under the category of *trial error.*

"In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, *incorrect instructions,* or prosecutorial misconduct...." At page 2149. (Emphasis added)

---

1. This Court's practice has been to review sufficiency of the evidence by examining the allegations in the *indictment* and the evidence presented at trial. If there is no variance between the *indictment* and evidence, the evidence is sufficient. See: *Salazar v. State,* 643 S.W.2d 953 (Tex.Cr.App.1983); *Windham v. State,* 638 S.W.2d 486 (Tex.Cr.App.1982); *Alfaro/Kinser v. State,* 638 S.W.2d 891 (Tex.Cr. App.1982); *Gallegos v. State,* 635 S.W.2d 527 (Tex.Cr.App.1982) (on rehearing); *Jean Pierre, Inc. v. State,* 635 S.W.2d 548 (Tex.Cr.App. 1982); *Wiley v. State,* 632 S.W.2d 746 (Tex.Cr. App.1982); *Sewell v. State,* 629 S.W.2d 42 (Tex.Cr.App.1982): *Herrera v. State,* 623 S.W.2d 940 (Tex.Cr.App.1981); *Jones v. State,* 620 S.W.2d 129 (Tex.Cr.App.1981).

The error which the majority finds in this case certainly has nothing to do with the guilt or innocence of the appellant. Clearly, the State proved each and every allegation in the indictment. A reading of the record shows that the appellant's ex-wife, Mary Benson, had filed assault charges against appellant. She had been subpoenaed to appear in court as a witness against appellant. Two days before the trial date, appellant met with Mary Benson in his attorney's office and tried to persuade her to drop the charges. She refused. Later that day, appellant broke into the house where Mary Benson was staying with her mother, Virgie Harris. Mrs. Harris testified that she heard three shots and heard her daughter scream, "MaMa, that's him." She walked into her living room and saw appellant armed with two rifles. He was pointing one rifle at Mary Benson and her child. Appellant told his victims that he could not go on under the pressure. When Virgie Harris began trying to talk to appellant, he attempted to hit Mrs. Harris with the butt of one of the guns. As this was occurring, Mary Benson ran out of the house and yelled at the neighbors to summon the police. Appellant followed her out of the house and told her he would shoot their child if she did not go back into the house. Mary Benson went back into the house with appellant. Appellant told Mary Benson that, since she did not listen to him at the attorney's office, he was tired of talking. By this time, the police had arrived, but appellant refused to give up. As appellant held Mary Benson at gunpoint, the police tried to talk appellant out of the house. At one point, appellant told Mary Benson to go lock the back door. As she was locking the door, the telephone rang and, as appellant turned to answer it, Mary Benson grabbed her child and escaped.

Surely, the jury, upon hearing the allegations of the indictment and the evidence in this cause was correct in finding sufficient evidence to convict appellant. There is no doubt that appellant was guilty as charged in the indictment.

I am sure that the majority would have found the evidence sufficient in this case had the abstract portion of the charge set out above read either that:

"A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another *as a public servant, witness, or informant.*" (Emphasis added)

or that:

"A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for or on account of the service of another."

Such changes in wording have nothing to do with the guilt or innocence of the appellant. Nor do they affect the substance of the evidence which the State was required to present in order to meet the allegations of the indictment.

The majority opinion as written is especially menacing when one considers the implications of much of its language. As a result of the majority's statement that "[t]he statutory elements of an offense must be set out either in the application paragraph *or in the definitional portion of the charge*," [page 714] fundamental error in the charge will no longer be confined to the application paragraph of the charge. Up until now the law has been that the jury charge in its *application paragraph* must require the jury to find all the elements of the offense, or if when *applying the law to the facts,* a trial court charges the jury on the component parts of an element of the offense rather than the element itself, the charge must require the jury to find all of the parts of that element in order to convict. *Lewis v. State,* 656 S.W.2d 472 (Tex. Cr.App.1983); *Evans v. State,* 606 S.W.2d 880 (Tex.Cr.App.1980).

As I noted above, I do not think that the court's charge contained error. The term "witness" as used in the abstract portion of the charge was not defined. It has long been the rule that when a term is not defined in the jury charge, the jury is left to apply a layman's definition of the term.

The majority mistakenly relies on *Ulmer v. State,* 544 S.W.2d 414 (Tex.Cr.App.1976), and *Jones v. State,* 628 S.W.2d 51 (Tex.Cr. App.1982), to support their assertion that "witness" means "one who *has* testified in an official proceeding" and thus does not include a "prospective witness." *Ulmer* does not support the majority's position. Ulmer was indicted for retaliating against "Oscar Hutchins, a witness in a Grand Jury proceeding in the United States District Court for the Western District of Texas, Midland Division." 544 S.W.2d at 414.

"Since the indictment alleged and the evidence showed that the retaliation was for Hutchins' service as a witness before a *federal* grand jury, the legal issue before this Court is whether the term 'witness' as used in V.T.C.A.Penal Code, Sec. 36.06(a), supra, includes a person who has appeared and given testimony before a *federal* grand jury. Appellant says that 'the alleged victim does not fulfill the elements of the Code to be a witness. He did not testify in an official proceeding of the State government, as defined in the Code.'" 544 S.W.2d at 414

The Court in *Ulmer* went on to note that the term "witness" was not defined in the Penal Code:

"We do not agree with appellant's contention that the term 'witness' as used in Section 36.06(a), supra, was meant to be limited to one who testifies in an official proceeding of the State government as the term government is defined in the Code.... We conclude that as *applied to the facts in the instant case,* 'witness' applies to one who testifies before a federal grand jury or federal official proceeding in the same manner as it would apply to one who testifies in a State court or before a State grand jury or other official State governmental agency. This is so because the term is not limited by the statute and because the gravamen of the crime is the unlawful act causing or threatening harm committed in retaliation for or on account of the victim's service as a witness. If the Legislature had intended to limit the term 'witness' to one who testified before an official proceeding of State government, 'witness' would have been so limited in the same manner as was the term 'informant' in Subsection (b) of Section 36.06, supra." (Emphasis in original) (footnote omitted) 544 S.W.2d at 415, 416.

The definition of "witness" upon which the majority relies was not recognized until this Court's decision in *Jones v. State,* 628 S.W.2d 51, supra, some two and one half years after the trial of this case occurred. How was anyone involved in the trial of this case—judge, prosecutor, appellant, juror—expected to know that this Court would severely restrict the definition of witness in Section 36.06 to apply only to "one who *has* testified in an official proceeding?" Surely, that was not the commonly accepted definition of the term, at the time of the trial in this case. I submit that under the law as it was known to the parties in 1978 when this case was tried the evidence was clearly sufficient to show that Mary Benson was a "witness" within the meaning of the trial court's charge. Indeed, the record shows that at the time of trial the appellant himself believed that the State had to prove that Mary Benson was a "witness" under Section 36.06.

This is demonstrated in his requested jury charge where the appellant asked that the judge charge the jury as follows:

"(4) The essential elements of the offense of the offense (sic) of retaliation must be proved beyond a reasonable doubt and these are:

(1) Serlee Benson

(2) intentionally or knowingly

(3) harms or threatens to harm

(4) another

(5) by an unlawful act

(6) in retaliation

(7) for service *as a witness.*"

(Emphasis added)

To reverse the case now because the jury charge in effect was worded just as appellant requested seems ludicrous.

In *Burks,* the Supreme Court, in discussing the occurrence of trial error, noted:

"When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, *just as society maintains a valid concern for insuring that the guilty are punished.*" (Emphasis added)

Even if the charge were erroneous (which I do not concede under the facts presented by this record), the State has met the evidentiary burden placed upon it by the indictment. The holding of the majority flies directly in the face of the Supreme Court language quoted above—society's valid concerns are hereby invalidated!

Thus, I must dissent to the denial of the State's second motion for rehearing. First, no appellate court should reverse and acquit when the evidence clearly proves up the allegations in the indictment, but the abstract portion of the jury charge contains a defect which has no bearing on the guilt or innocence of the appellant. Secondly, even if the jury charge should be considered when discussing sufficiency of the evidence, the evidence in this case was clearly sufficient to find that appellant had the intent to retaliate against a witness—witness being properly defined at the time of trial by a layman's definition.

For the above reasons, I dissent.

CAMPBELL, J., joins in this dissent.