Hollis ELLIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–86–0081–CR.

Court of Appeals of Texas,
Tyler.

March 24, 1987.

Rehearing Denied April 30, 1987.

Discretionary Review Refused
Dec. 2, 1987.

Eugene McElyea, Crockett, for appellant.

Chester V. Hines, Dist. Atty., Crockett, for appellee.

COLLEY, Justice.

Appellant Hollis Ellis was convicted by a jury of possession of an alcoholic beverage in a dry area with intent to sell.[1] The jury assessed his punishment at confinement in the county jail for thirty days and a fine of $1,000.[2] We affirm.

The facts are these. Ellis on the 16th day of August, 1985 (the date of the offense), was the owner of land located in the city of Crockett, Houston County, a dry area. Two buildings were situated on the property, the first a convenience store known as the Bargain Center, hereafter referred to as store, and the other was a residence-type building located about twenty feet from the store. The address of the store was 211 West Bell. The address of the other building was 209 West Bell. On August 16, 1985, two enforcement agents of the Alcohol and Beverage Commission, Jerry K. Phillips and David Ball, began surveillance of the premises located at 209 and 211 West Bell. Their testimony reveals that an unidentified white male was observed sitting in front of the store when several persons drove up in an automobile, stopped and engaged in a brief conversation with the male. Almost immediately the white male went to the building located at 209 W. Bell and returned with a 12–pack of Budweiser beer. He gave it to the per-

---

1. Under Tex.Alco.Bev.Code Ann. § 101.31 (Vernon 1978). All references in this opinion to sections are to the Texas Alcoholic Beverage Code unless otherwise indicated.

2. Pursuant to section 1.05.

sons who then drove away.[3] Thereafter the officers conducted a search under a search warrant secured from a magistrate. The evidence does not indicate that any alcoholic beverages were found in the store, but a large quantity of alcoholic beverages, including malt liquor, whisky, gin, and vodka, was found in the building located at 209 W. Bell, all of which were seized by the officers. The interior of the building was described by one officer in this language: "It looked like a package store to me. It had beer, liquor."[4] Ellis testified that the alcoholic beverages seized from the premises at 209 W. Bell did not belong to him. He testified that those premises were rented to L.C. Jones.[5] In support of his testimony that he rented the building, Ellis introduced a number of receipts purportedly given to Jones for payment of rent on the premises: three in 1983, two in 1984, and three in 1985. Officers testified that during their search of the building at 209 W. Bell they found no property, documents or personal effects labeled L.C. Jones; and that the building interior was dusty and dirty and that the furniture, which consisted of a bed and a couch and a chair or two, was in bad condition and, judging from the appearance of the interior, it appeared that no one had been regularly living there in recent times. Ellis denied that he had a key to the lock on the door of these premises. Phillips testified that entry into the locked building was effected by prying off a hasp. Ball testified that the door was locked, "but you could take the door and wiggle it a bit," and it opened, and that the hasp or lock was not destroyed in gaining entry. He testified that the door came open without much force being applied. Both officers testified that two or three "freezers or refrigerators" were located in the building and were "plugged in and running." Beer

and malt liquor were stored in these appliances.

Ellis contends under his first point that the evidence is insufficient to support his conviction, arguing specifically that the State failed to establish his possession of the alcoholic beverages seized. Under his second point he claims that the State failed to disprove the reasonable hypothesis that the unknown white male was in possession of the alcoholic beverages. He correctly states that there is no testimony that he ever entered the premises at 209 W. Bell on the date of the offense. Furthermore, he contends that the State failed to present any evidence identifying the white male who the officer observed entering the premises at 209 W. Bell. Under our view of the record, there is no direct evidence that this white male was an employee of Ellis, but Phillips did testify that he had seen the man at the store on "other occasions." Ellis elected to testify in the case, but he was never asked during cross-examination in the guilt/innocence phase the names of white males employed by him on the date of the offense, and particularly at the time of the surveillance made by the officers. Thus, the State's case against Ellis rests on the undisputed proof that Ellis owned the building; that large quantities of alcoholic beverages were stored in the refrigerators or freezers located in the building; that agent Ball purchased alcoholic beverages at the store from an employee of Ellis in 1983 or 1984; and that the unidentified white male sold beer which he secured from the premises at 209 W. Bell. The record reveals that neither of the testifying officers ever approached or questioned the white male, nor did they continue to observe him immediately following the delivery of the beer to the also unidentified purchasers thereof.

The Penal Code[6] defines "Possession" as meaning, "actual care, custody, control or management." This statutory

---

3. The vehicle was stopped later and the beer was confiscated by law officers.

4. Sizable quantities of malt liquor, whisky, gin, and vodka was introduced into evidence and identified as a part of the beverages seized by the officers on August 16, 1985. Ellis did not

deny that these beverages were seized from the building at 209 W. Bell.

5. Jones' whereabouts at the time of Ellis' arrest and at the time of trial was unknown.

6. Tex.Penal Code Ann. § 1.07(28) (Vernon 1974), hereafter referred to as Penal Code.

definition is virtually identical with the judicial definition of that term as fashioned and applied before the advent of the 1974 Penal Code, e.g., *see Alston v. State*, 154 Tex.Crim.R. 148, 226 S.W.2d 443, 444 (1950). However, it is well established in these character of cases that the State is not required to prove ownership[7] or exclusive possession.[8] Additionally, we note that the court did not charge the jury regarding the prima facie evidence rule embraced in section 101.32.[9] Hence, the jury's verdict cannot rest on the fact that since Ellis possessed more beer and liquor than allowed under section 101.32, he possessed the same with an intent to sell, even if Ellis failed to rebut the showing. *Boozer v. State*, 717 S.W.2d 608, 610 (Tex.Cr.App. 1984); *Benson v. State*, 661 S.W.2d 708, 714 (Tex.Cr.App.1982). *See also Idrogo v. State*, 589 S.W.2d 433, 434 (Tex.Cr.App. 1979). Tex.Code Crim.Proc.Ann. art. 36.13 (Vernon 1981). This is not to say, however, that the jury could not consider the large amount and varied kinds of alcoholic beverages actually seized by the A.B.C. agents as it bore on the issue of Ellis' intent to sell the same. This it had a right to do independent of any instructions under section 101.32.

A reviewing court in judging whether the evidence is sufficient to support a conviction must view all of the evidence in the light most favorable to the verdict, *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Cr. App.1984), and then determine "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Where the State relies on circumstantial evidence, as it does here, for the conviction, the conviction cannot stand "[i]f the *State's* evidence supports ... [a reasonable] inference other than a finding of the essential elements of the crime, then no trier of fact could rationally find the accused guilty beyond a reasonable doubt—and this is true irrespective

of the character of the evidence." (Emphasis ours.) *Wilson v. State*, 654 S.W.2d 465, 472 (Tex.Cr.App.1983).

In this case, the State's evidence shows that Ellis was, on August 16, 1985, the owner of the land and building where the alcoholic beverages were seized. It also demonstrates that the unidentified white male had access to that building, and on the occasion in question, removed a carton of beer therefrom and delivered it to unidentified persons. The State's evidence also establishes that the officers gained entry into the building by force because no key to the lock securing the door was available to them. These facts standing alone might well establish an outstanding reasonable hypothesis that the unidentified white male had the exclusive care, control and management of the alcoholic beverages; however, the State's case did not stop there. Its evidence also showed the unidentified male was seated in front of Ellis' store when the potential customers arrived, that these parties conversed in that area, whereupon the unidentified white male then went to the building located but twenty feet from the store and brought out the beer. Given these facts, as well as the testimony of Phillips in rebuttal, that grocery sacks, cartons and boxes commonly found in grocery stores were also stored in the building, we conclude that no reasonable inference arose from this evidence that the unidentified white male was in exclusive possession of the beverages found and seized by the officers. Therefore, we conclude that the evidence produced by the State and the inferences arising therefrom prove beyond a reasonable doubt that Ellis, the undisputed owner of the building, had at least joint possession, that is, care, control and management of the alcoholic beverages at the time of the offense on August 16, 1985, and that rational jurors could have so found. Points one and two are overruled.

---

7. *Alston*, 226 S.W.2d at 444.

8. *Huggins v. State*, 146 Tex.Crim.R. 606, 177 S.W.2d 269, 270 (1944).

9. § 101.32. Prima Facie Evidence of Intent to Sell

(a) Possession of more than one quart of liquor in a dry area is prima facie evidence that it is possessed with intent to sell.

(b) Possession in a dry area of more than 24 twelve-ounce bottles of beer, or an equivalent amount, is prima facie evidence of possession with intent to sell.

**470**

By his points three through nine, Ellis contends that the trial court erred at the punishment phase of his trial in overruling his objections to the State's opening statement, certain testimony relating prior extraneous offenses committed by Ellis, his wife, and employees, which were not shown to have resulted in final convictions. We have studied the record carefully, and while we agree that gross errors were committed in admitting certain testimonial evidence regarding extraneous liquor offenses committed by relatives and employees of Ellis, and testimony concerning searches and seizures showing extraneous offenses by Ellis not shown to have resulted in final convictions, all of these errors have been either waived by Ellis' cross-examination of the witnesses, or by his bringing out the same information on cross-examination from other State's witnesses, and by failing to voice specific objections to preserve his complaints for review. In any event, under this record we conclude that the points are without merit and they are overruled.

The judgment is affirmed.