Romey Lynn POLK, Appellant,

v.

The STATE of Texas, Appellee.

No. 1043–85.

Court of Criminal Appeals of Texas, En Banc.

Feb. 24, 1988.

On Rehearing Feb. 24, 1988.

John H. Hagler, Dallas, for appellant.

Henry Wade, Former Dist. Atty., John Vance, Dist. Atty., Constance M. Maher and Ruth E. Plagenhoef, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING AFTER PETITION FOR DISCRETIONARY REVIEW REFUSED

DUNCAN, Judge.

Appellant was convicted by a jury of theft of property of a value of $750.00 or more but less than $20,000.00. Tex.Penal Code Ann., § 31.03(b)(2) (Vernon Supp. 1988). Punishment was assessed by the trial judge at seven years confinement in the Texas Department of Corrections. On appeal, the Dallas Court of Appeals reversed the appellant's conviction. *Polk v. State*, 695 S.W.2d 720 (Tex.App.—Dallas 1985, pet. granted).[1] We granted the State's Motion for Rehearing after initially refusing its Petition for Discretionary Review to determine whether the court of appeals properly reviewed the sufficiency of the evidence. More specifically, and in the first instance, the State claims that the court of appeals failed to review the sufficiency of the evidence in light of the jury charge relative to whether the grand jury exercised due diligence to determine the identity of an "unknown" individual.

An automobile owned by a Beth Cowart was reported stolen on February 26, 1984. On March 8, 1984, the appellant asked a Dallas pawnbroker if he was interested in purchasing some stolen automobile parts. These parts were allegedly within a Jartran rental van in which the appellant and another man had arrived. Later, the pawnbroker informed the police of what the appellant had said. On the same day, an Officer Gargani answered a theft of service call regarding the Jartran truck. Having knowledge of both the theft of service call and what had transpired between the pawnbroker and appellant, Officer Gargani set out to locate the Jartran truck. While on patrol, Officer Gargani spotted the truck and arrested the appellant. Automobile parts from the Cowart automobile were thereafter found inside the Jartran truck.

At trial, among the other witnesses, the State called Larry Kortage, the assistant foreman of the grand jury which indicted the appellant. The former grand juror confirmed that the appellant was indicted based upon the evidence presented to the grand jury. He also testified that the grand jury had heard no evidence as to who originally stole the automobile and that this individual was therefore unknown to the grand jurors. On cross-examination, the former grand juror could not say for sure that he actually remembered this particular case or, consistently, whether or not the grand jury had exercised due diligence to ascertain the identity of the original thief. On redirect, Kortage testified that he had reviewed the transcript of the grand jury proceedings in this case prior to the trial. He also acknowledged that the appellant's case was one of over 400 cases heard by this particular grand jury over a three

---

1. That portion of the court of appeals' opinion dealing with the revocation of probation has already been reviewed and disposed of by this Court in *Polk v. State*, 729 S.W.2d 749 (Tex.Cr. App.1987).

month period. Finally, he reiterated that to the best of his recollection the grand jury had heard no evidence as to the identity of the thief.

The appellant was tried under a two paragraph indictment.[2]

According to the court of appeals, "[t]he issue [became] whether the grand jury used due diligence to learn the name of the unknown person." *Polk v. State, supra,* at 722. After concluding that the evidence failed to establish that the grand jury exercised due diligence in making such a determination, the court of appeals reversed the appellant's conviction and ordered a judgment of acquittal.

In one ground for review the State contends that the court of appeals failed to measure the sufficiency of the evidence with regard to grand jury due diligence in light of the jury charge that was given. Admittedly, the charge at issue does not require a finding of due diligence on the part of the grand jury.

[If you believe the defendant] ... did then and there unlawfully, knowingly or intentionally appropriate property, namely exercise control over property, other than real property, to-wit: a car door, or a partial front end sheet metal assembly, or two (2) car seats, or a rear air foil, or wheels, or tires, or radio speakers, of the value of at least $750.00 but less than $20,000.00, with the intent to deprive the owner, Beth Cowart, of the property, and the said property was stolen and the defendant did appropriate the said property knowing that the property was stolen by another, *whose name and identity is unknown to the Grand Jurors,* then you will find the defendant guilty of theft, as charged in the indictment. [Emphasis added.]

In *Boozer v. State,* 717 S.W.2d 608 (Tex.Cr.App.1984) we held that questions regarding the sufficiency of the evidence must be resolved in light of the charge which is given. See also *Benson v. State,* 661 S.W.2d 708 (Tex.Cr.App.1983); *Marras v. State,* 741 S.W.2d 395 (Tex.Cr.App.1987). In *Boozer* the jury charge unnecessarily increased the State's burden of providing independent evidence necessary to corroborate accomplice testimony. Likewise in *Benson,* the charge which was submitted constituted an unnecessary limitation on the legal theories available to secure a conviction for retaliation. In *Marras,* a capital murder case, the punishment charge erroneously instructed the jury that the defendant's prior conviction could only be used to show his intent. As a practical, evidentiary matter the instruction rendered evidence of the defendant's prior criminal record a nullity. In all three cases, the jury charge improperly increased the burden of proof required to secure a conviction. Or, in the last case, the death penalty.

In response to the State's contention, the appellant argues that the *Benson–Boozer* holdings are inapplicable because a conviction cannot stand on a jury charge which authorizes a conviction on *less* evidence than the law mandates. In other words, the appellant argues that although the jury charge in this instance failed to require a finding of due diligence on the part of the grand jury to ascertain the identity of the "unknown" individual, the appellant's conviction must nonetheless be reversed because the law requires a finding of due diligence in such an instance.

The appellant is undoubtedly correct when he asserts that *Benson* and *Boozer,* and more recently, *Marras,* cannot stand for the proposition that a jury charge may authorize a conviction on less evidence than the law requires. A review of the sufficiency of the evidence measured by the charge which is given presupposes a charge which is correct for the theory of the case presented. *Benson v. State,* supra, at 715 (Opinion on State's second motion for rehearing). As Judge Clinton later observed, "[i]t would be anomalous to mea-

---

2. The first paragraph alleged that the appellant unlawfully appropriated the Cowart automobile. The second paragraph alleged that the appellant unlawfully appropriated the disassembled parts of the Cowart automobile "knowing that the property was stolen by another, whose name and identity is unknown to the Grand Jurors." The appellant was found guilty by the jury under the second paragraph of the indictment.

sure the sufficiency of evidence against an authorization that reduces the State's burden of proof from that which is minimally required under the law...." *Fain v. State*, 725 S.W.2d 200, 204 (Tex.Cr.App. 1986) (Clinton, J., concurring and dissenting). Consequently, the issue in this case ultimately becomes whether a proper jury charge requires a finding of due diligence on the part of the grand jury to determine the identity of an unknown individual.

The elements of the offense with which the appellant was convicted are: (1) a person, (2) with the intent to deprive the owner of property, (3) appropriates property, (4) which is stolen property, (5) knowing it was stolen, (6) by another. *Franklin v. State*, 659 S.W.2d 831 (Tex.Cr.App.1983); *Dennis v. State*, 647 S.W.2d 275 (Tex.Cr. App.1983).

In addition, the indictment also contained an allegation that the initial thief's "name and identity is unknown to the Grand Jury." The latter allegation, however, is no longer necessary to properly plead the offense of theft under § 31.03(b)(2). In *McClain v. State*, 687 S.W.2d 350 (Tex.Cr.App.1985) we stated that "it has now been acknowledged that the 'manner of acquisition' is inconsequential to the evil of a theft: the gravaman of theft is in *depriving the true owner of the use, benefit, enjoyment or value of his property*, without his consent." (Emphasis in original.) *Id.*, at 353.[3] Consequently, the State must plead and prove only that the property was stolen by another.

It is true that unnecessary words or allegations may be rejected as surplusage if they are not descriptive of that which is legally essential to the validity of an indictment. *Franklin v. State, supra*, at 833. But where the unnecessary matter is descriptive of that which is legally essential to charge a crime, it must be proven as alleged even though needlessly stated. *Id; Weaver v. State*, 551 S.W.2d 419 (Tex.Cr. App.1977). Before reaching the primary issue, we must determine whether the additional, seemingly unnecessary allegation in the indictment is descriptive of that which is legally essential or merely surplusage.

As previously stated, the State must plead and prove that the property was stolen by another. The allegation that this individual was unknown to the grand jurors is descriptive of the "another" participant in the theft, or the original thief. This allegation is appropriate to an indictment for theft under § 31.03(b)(2), V.A. P.C., because it elaborates on and describes the essential elements of the offense that must be pled. *Franklin v. State, supra*, at 834. Accordingly, such an allegation is not surplusage and the State was bound to prove the allegations in the indictment. That is, the State must prove that the name and identity of the person who stole the property was unknown to the grand jury.

Both the appellant and court of appeals cite *Payne v. State*, 487 S.W.2d 71 (Tex.Cr. App.1972) for the proposition that when an indictment alleges that the name of such a person is unknown, the State has the burden of proving the grand jury exercised reasonable diligence to ascertain the name. In *Payne* the defendant was convicted of receiving and concealing stolen property "from a person to the Grand Jurors unknown." Yet, during the course of the trial it became apparent that the identity of the initial thief was known to the police officer investigating the case at the time he testified before the grand jury. This Court found that in such a case the grand jury must at least ask the name of a person

---

3. In *McClain v. State*, 687 S.W.2d 350 (Tex.Cr. App.1985) we stated:

Thus, the varying misleading emphasis on aspects of acquisitive conduct proscribed under former penal codes were sifted out by the new, and a single offense was distilled from the common elements contained in each: clearly, if one exercises control over property knowing it is without the owner's consent, and intending to deprive the owner of it, it matters not "how" the actor got the property, whether he intended to benefit himself or another, intended "permanently" to deprive the owner, etc.

Consequently, the longstanding requirement of *State v. Perkins*, 45 Tex. 10 (1876) that an indictment alleging receipt of stolen property from another requires the name of the person from whom the stolen property was received, is not applicable.

before stating in the indictment that the person was unknown. *Id.*, at 74. The Court then stated the applicable rule:

> The law is settled that an allegation that the name of a person connected with the offense was unknown to the grand jury must be supported by sufficient proof. And where this allegation becomes an issue on the trial, the proof must show that the grand jury used due diligence to ascertain the unknown name. *Id.*

The Court concluded that the record revealed that the grand jury failed to exercise reasonable diligence to determine the name of the person from whom the stolen property was received.

It is important to note that *Payne* requires proof of grand jury due diligence *only* when the allegation that the person from whom the property was received was unknown becomes an *issue*. The court of appeals concluded, without any analysis whatsoever, that the identity of the person unknown to the grand jury became an issue. Likewise, in his reply brief, the appellant contends the "allegation of the unknown individual was clearly raised and was at issue in this case." Both of these contentions are erroneous.

■ The *issue* that *Payne* refers to is not whether the grand jury exercised due diligence. Instead, the preliminary *issue* that must be raised by the evidence is whether or not the allegation that the person from whom the property was received was actually unknown. In other words, the *issue* is whether or not the identity of the allegedly unknown person was known or with the exercise of reasonable diligence capable of being known. Consequently, grand jury due diligence must be proven by the State only after the evidence reveals that the original thief's identity was known or capable of being discovered. If the identity of the original thief was unknown or incapable of being discovered then evidence of a grand jury's diligence in trying to discover that which remains unknown would be a time consuming exercise of self-serving futility.

■ Such a rule is in keeping with the aversion of appellate courts to review the function of the grand jury. This Court will not review the sufficiency of the evidence presented to the grand jury to determine whether an indictment is justified. *Brooks v. State*, 642 S.W.2d 791, 795 (Tex.Cr.App. 1982). In addition, we will not go behind an indictment which appears to be legally valid. *Carr v. State*, 600 S.W.2d 816, 817 (Tex.Cr.App.1980). There is no question that the indictment charging the appellant with the offense of theft was legally valid.

The real question then is whether the identity of the person from whom the property was received that was unknown later became known. Only then does the State assume the additional burden of proving grand jury due diligence in making such a determination.

The rule was aptly stated in *Cunningham v. State*, 484 S.W.2d 906 (Tex.Cr.App. 1972):

> ... where nothing is developed in a trial to suggest that investigation by the grand jury could have ascertained from whom a defendant received the stolen property, there is a prima facie showing that the name of the party from whom the defendant received the property was unknown to the grand jury, thereby supporting such averment in the indictment.[4] The question of variance is not presented. This is especially true where the whole case shows that if the grand jury had been in possession of all the evidence developed on the trial it still could not have determined from whom the defendant received the stolen property. *Id.*, at 911.

See also, *Scott v. State*, 732 S.W.2d 354, 359 (Tex.Cr.App.1987).

A thorough review of the record indicates that if the grand jury had been in possession of all of the evidence presented at the appellant's trial they still could not have ascertained from whom the stolen property was received.

The owner of the stolen automobile testified that she last saw the car in the park-

---

4. In fact, the oath of the grand jurors requires each to swear to "diligently inquire into ... all such matters and things as shall be given you in charge." Article 19.34, V.A.C.C.P.

ing lot of her apartment complex at approximately 10:30 p.m. on February 25, 1984. Upon waking early the next morning, the car was discovered missing. The owner had not heard or seen anyone take the automobile. The pawnbroker, whom the appellant had solicited regarding the stolen auto parts, did not say that the appellant had implicated either himself or his companion in the initial theft of the automobile. On cross-examination, the investigating police officer testified that he did not see who had actually stolen the car. The only other witnesses testified as to the chain of custody of the stolen parts following the appellant's arrest and the fair market value of both the stolen automobile and the individual parts.

The record does not give any indication as to the identity of the original thief of the automobile. In this case the allegation that the identity of the initial thief was unknown to the grand jury was simply never put in issue because the original thief's identity remains unknown.

As previously noted, the indictment which charged the appellant with theft alleged that the stolen property was received from a person "unknown to the Grand Jurors." The assistant grand jury foreman testified that this was indeed the case. His inability to recall exactly which questions were asked and the procedures employed in the appellant's particular case are merely factors for the jury to consider in weighing the value of the evidence.

In this case the degree of diligence the grand jury exercised in trying to identify the original thief was not an aspect of the offense with which the appellant was charged, *McLeroy v. State*, 113 Tex.Crim. 118, 97 S.W.2d 184 (1936), because it did not become an issue at trial. Thus, no variance exists between the allegations contained in the indictment and the proof at trial.

The judgment of the court of appeals is reversed and the judgment of the trial court affirmed.

ONION, P.J., and McCORMICK, J., concur.

TEAGUE, Judge, dissenting.

I am compelled to dissent to the decision of an aggressive and assertive majority of this Court to impose on a defendant in 1988 new rules to "the game" that was played by the defendant in August of 1984. I find that virtually every decision of this Court, which might support the majority opinion, that the majority opinion relies upon, was not extant when appellant's trial occurred, and the ones that were extant when the "game was played" are not applicable to the issue that is before this Court for it to resolve.

The record reflects that the jury convicted Romey Lynn Polk, hereinafter appellant, of appropriating property "knowing that the property was stolen by another, whose name and identity is unknown to the Grand Jurors." On direct appeal, appellant asserted in his first ground of error that "The evidence is insufficient to show that the grand jury used due diligence to ascertain the name of the individual that was alleged in the indictment as unknown to the grand jurors." Appellant correctly relied upon two of this Court's decisions, *Payne v. State*, 487 S.W.2d 71 (Tex.Cr.App.1972), and *McIver v. State*, 555 S.W.2d 755 (Tex. Cr.App.1977), as authority to support his contention. The State's argument in response to his contention was that "There is simply no proof in the record that the question [going to the identity of the thief] was never asked." (Page 5, Appellee's Brief on Direct Appeal.) The Dallas Court of Appeals, in an extremely well written and well reasoned published opinion by Justice Whitham, see *Polk v. State*, 695 S.W.2d 720 (Tex.App.–5th 1985), reversed the trial court's judgment of conviction, relying upon this Court's long standing rule that a condition precedent to the grand jury indictment stating that the name of any person other than the accused was unknown to the grand jury it is incumbent upon the State to establish before the jury that the grand jury at least made an inquiry whether the name of the "unknown" person could have been ascertained. My research

to date has not yet revealed just how much of an inquiry was required to be made. Nevertheless, the cases make it clear that "some" inquiry must be made before it is permissible to make an "unknown" allegation in the indictment. The court of appeals correctly found that there was no evidence in the record that might have reflected or indicated that the grand jury made any efforts to establish that the name of the "unknown" person could not be ascertained. Thus, based upon the appellate record, the court of appeals correctly found that not only had the grand jury not used due diligence, it had not used any diligence at all in trying to ascertain the name of the person from whom appellant received the stolen property, as alleged in the indictment. As a matter of case law, the State had the burden on this point. The court of appeals, albeit implicitly, held that arguing that "There is simply no proof in the record that the question as to the original thief's identity was never asked", which substantively is all that the State did on direct appeal, just would not cut it.

After the court of appeals reversed the trial court's judgment of conviction, the State, through new counsel, filed a petition for discretionary review, with new counsel tremendously altering the position that the State had taken on direct appeal. The State argues in its brief that because the State was not required to allege in the indictment that "the Grand Jury used due diligence", and that because the unobjected to by appellant charge to the jury placed no such requirement on the State, there was no need for the State to prove any diligence, much less due diligence, in order to establish who the "unknown" person might have been, that was alleged in the indictment. See page 10 of State's Brief on Petition for Discretionary Review.

The court of appeals, because these contentions were not presented to it, understandably did not write on them.

Starting with the above premise, the State's petition then refers this Court to several of its cases that were decided after appellant's trial occurred, that dealt with the issue of the sufficiency of the evidence and the charge to the jury; several of its cases that dealt with whether there was a variance between what was alleged and what was proved; and concluded that the State had nevertheless established a prima facie case in any event.

The majority opinion by Judge Duncan erroneously asserts that appellant failed to raise the issue, that the grand jury did not use due diligence, in the trial court. The record, however, makes it clear that appellant did raise the issue that the State had failed to establish beyond a reasonable doubt that the grand jury used due diligence in attempting to ascertain who the "unknown" person was. The record reflects that at the close of all the testimony, appellant's counsel moved for an instructed verdict of not guilty on the ground that the evidence was insufficient to support a judgment of conviction, and clearly argued to the trial judge that the evidence was insufficient to show that the grand jury had used due diligence in attempting to ascertain the name of the "unknown" person. The trial court denied the motion. On the following day, before arguments occurred, appellant reurged his motion and it was again denied. Finally, appellant presented the same complaint during the hearing on his motion for new trial, which was denied. To further show that appellant properly complained in the trial court, and raised "the issue", I attach to this opinion as "Appendix A" a copy of his written motion for instructed verdict and the colloquy that occurred between the trial judge, appellant's counsel, and the prosecuting attorney that concerned appellant's motion for instructed verdict of not guilty.

Article 21.07, V.A.C.C.P., provides that when the grand jury does not know the name of a person necessary to be stated in the indicment it is sufficient to plead that the name of the person is unknown to the grand jury. This Court has long held that before a grand jury indictment may make that allegation it is first necessary for the grand jury to make an inquiry as to whether the person was in fact not known, i.e., it is impermissible for the grand jury to just state: "We do not know the name of the person." The grand jurors, under their

oaths of office, see Art. 19.34, V.A.C.C.P., are required by law to "diligently inquire into ... all such matters and things as shall be given you in charge." Thus, the grand jury must go further and use due diligence to ascertain the name of that person. Furthermore, this Court has long held, where an "unknown" person or object is alleged in the indictment, it is incumbent upon the prosecution to prove during the trial that the grand jury, after reasonable efforts to do so, was unable to establish what was alleged in the indictment "to the grand jury was unknown." This Court has also long held that a fatal variance will exist between the allegation, "to the grand jurors unknown", and the proof, unless such proof is presented to the jury.

Such rule of law has been applied by this Court to *any* case where it was alleged in the indictment that either the name of a person or an object was unknown to the grand jury. None other than Judge Douglas of this Court, in authoring the opinion of this Court in *McIver v. State*, 555 S.W.2d 755 (Tex.Cr.App.1977), a murder case where the indictment alleged that the deceased was struck and stabbed with a blunt instrument and a sharp instrument, "which were, to the grand jurors, unknown", stated the following: "When an indictment alleges that the deceased was killed 'by some means, instrument, and weapon, to the grand jury unknown,' it is incumbent upon the State to prove that the grand jury, *after efforts to do so*, was unable to find out the kind and character of weapon or instrument used. *No such proof was offered in the instant case.* Under our prior decisions, such failure constitutes reversible error ... For the reasons stated above, the judgment is reversed and the cause is remanded." (at 756). (My emphasis.) Also see the many theft cases that are collated in McColl & McColloch's *Erisman's Reversible Errors in Texas Criminal Cases* (1986 edition), and Erisman's *Manual of Reversible Errors in Texas Criminal Cases* (1956 edition).

On direct appeal, one of the decisions of this Court that appellant's counsel relied upon to support his first ground of error was *McIver v. State,* supra. The majority opinion does not even mention *McIver*, supra.

In short, where there is an "unknown" allegation in the indictment, and the defendant complains in the trial court, as occurred here, that the State's proof is insufficient to support that allegation, it is incumbent upon the prosecution to establish, with proof beyond a reasonable doubt, that allegation.

If the issue is raised during the trial, and the State presents no evidence that might establish beyond a reasonable doubt that the grand jury exercised a reasonable effort to establish the "unknown" allegation that is in the indictment, then there is a fatal variance between what was alleged and the proof. Although it might be true in this instance that the grand jury did not know the name of the person from whom appellant received the stolen property, that is not to say that had the grand jury made any effort to cause the "unknown" to become "known", that the "unknown" would have remained "unknown". In other words, under this Court's long standing above rule of law, it is insufficient to simply state, "I don't know", as occurred in this cause; it is necessary to further state: "I don't know even though I tried to find out what I don't know", i.e., that by reasonable diligence the who or what was unknown could not be reasonably established in order to remove it from the "unknown." The fact, however, that the record might reflect that the "unknown" is still "unknown" does not answer the question whether, had the grand jury used due diligence, the "unknown" would have remained "unknown."

The majority opinion by Judge Duncan, however, changes all of the above. As far as my research reveals, never before in the history of this Court has the issue been formulated as the majority opinion formulates it, namely: "The issue is not whether the grand jury exercised due diligence. Instead, the preliminary *issue* that must also be raised by the evidence is whether or not the allegation that the person from whom the property was received was actually unknown. In other words, the *issue* is wheth-

er or not the identity of the allegedly unknown person was in fact known or with the exercise of reasonable diligence capable of being known. Consequently, grand jury due diligence must be proven by the State only after the evidence reveals that the identity was known or capable of being discovered. If the identity of the original thief was unknown then evidence of a grand jury's diligence in trying to discover that which is still unknown would be a time consuming exercise of selfserving futility . . . The real question then is whether the allegation that the person from whom the property was received was unknown later became known. Only then does the State assume the additional burden of proving grand jury due diligence in making such a determination." (Page 817.) It appears to me that what all of this means is that the defendant now has the burden of doing what the law charges the grand jury with doing, namely, investigating the case before an indictment may be returned. Does what the majority state also mean that when aware that the grand jury is investigating his client's case, if counsel for the accused makes it known to the grand jury that he wishes to assist it in the investigation of his client's case, it is now mandated that the grand jury must permit counsel to assist it in the investigation of that case? This is what the majority opinion clearly implies; otherwise, how will the defendant ever satisfy the conditions that the majority opinion sets out that must be satisfied before error, much less reversible error can occur?

Almost 100 years ago, this Court in *Farmer v. State,* 28 S.W. 197 (Tex.Cr.App. 1894), stated that for an indictment to be certain, see now Art. 21.15, V.A.C.C.P., where it was necessary to allege in the indictment the name of the person, it was required that the grand jury indictment state either the name of that person or allege that the name was unknown to the grand jury, with the State thereafter "showing" to the jury why this was so.

The law on what is required to be pled and proved by the State until today has always been clear, and most members of the bench and bar of this State in the past have understood it without any difficulty. Why then does an aggressive and assertive majority of this Court believe it is now necessary to change the law?

In this instance, the grand jury foreman's testimony is clear that the grand jury did not use any reasonable effort to ascertain the name of the "unknown" person. In fact, his testimony makes it clear to me that the grand jury did not use any diligence at all in attempting to ascertain the true name of the alleged "unknown" person from whom appellant was alleged to have received the stolen property. The record reflects that the grand jury foreman had reviewed a transcript of the grand jury proceedings that related to this case before he testified. However, the grand jury foreman never testified that the transcript reflected that the grand jury had attempted to ascertain who the "unknown" person might have been. The foreman merely testified that he had no independent recollection of hearing the case and that he did not know if any diligent effort had been made to ascertain the identity of the thief. Well, if any diligent effort at all had been attempted, would not this be reflected in the grand jury's transcript? If this had been the case, wouldn't the State have offered and had admitted into the record the grand jury's transcript? This omission from the record makes it absolutely clear to me that the grand jury was perhaps not made aware by the prosecutor in charge of that grand jury of its duty to diligently inquire into what would later be alleged against appellant. This omission from the record clearly shows that there is a fatal variance between what was alleged in the indictment against appellant and what was proved, as to the "unknown" person allegation of the indictment.

For all of the above and foregoing reasons, I respectfully dissent to an aggressive and assertive majority of this Court, without giving any reasonable or rational persuasive reasons why this should occur, implicitly overrules this Court's above long standing rule of law, that has long served the criminal jurisprudence of this State well.

APPENDIX A

Nos. F84–91339–L, F84–86894–L.

The State of Texas

vs.

Romey Lynn Polk

In the Criminal District Court Number Five of Dallas County, Texas

August 29, 1984

MOTION FOR INSTRUCTED VERDICT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW the Defendant in the above styled and numbered cause and respectfully moves the Court for an Instructed Verdict and in support thereof would show the Court as follows:

I.

That the State has wholly failed to prove each and every material element of the indictment beyond a reasonable doubt.

II.

That the evidence is insufficient to support a judgment of conviction.

III.

That the State has wholly failed to prove that the Defendant herein was in possession of the contraband charged in the indictment, as the State failed to establish any affirmative link between the contraband and the Defendant.

IV.

There is a fatal variance between the allegations of the indictment and the proof as offered by the State

WHEREFORE, PREMISES CONSIDERED, the Defendant respectfully moves this Honorable Court to Instruct a Verdict of not guilty as prayed for in this Motion.

Respectfully submitted,
(s) Davey O. Lamb
Davey O. Lamb,
Attorney At Law

Public Defender's Office
623 Records Building
Dallas, Texas 75202
Bar Card No. 11836300
749–6969
ATTORNEY FOR DEFENDANT

(IN THE PRESENCE OF THE JURY)

MS. ROLF: Nothing further.

THE COURT: Thank you, Mr. Capps. You may stand down, sir.

MS. ROLF: May this witness be excused?

THE COURT: Any objection?

MR. LAMB: I have no objections.

THE COURT: Mr. Capps, you may go about your business. Thank you, sir.

MS. ROLF: Your Honor, members of the jury, at this time the State rests its case in chief.

MR. LAMB: Your Honor, I have a matter that needs to be taken up outside the presence of the jury.

THE COURT: Okay. Ladies and gentlemen of the jury, let me ask you to go in the jury room. I think we have a brief law matter to get into, and I think I'll be able to bring you back in and go forward at that time.

(Whereupon, the jury was retired to the jury room and the following proceedings were had, in open court, out of the presence of the jury:)

(OUT OF THE PRESENCE OF THE JURY)

THE COURT: Go ahead. You had a motion to—well, for the record, you presented to the Court a motion for instructed verdict which—

MR. LAMB: Your Honor, I have before the Court a motion for instructed verdict, in that the evidence is insufficient to support a judgment of conviction, and also all the elements have not been proven up.

With regard to that, I would like to ask the Court to refer to a case I presented to it, Payne v. State—

THE COURT: Okay.

MR. LAMB: —which states, with regard to receiving stolen goods, that "Allegation that name of person from whom defendant received stolen goods was unknown to grand jury must be supported by sufficient proof and where that allegation becomes issue on trial, proof must show that grand jury used due diligence to ascertain the unknown name."

And I would submit to you that Mr. Kortage testified before this trial had not shown any diligence at all with regard to this matter; this matter has not been proven with regard to the second count. I would therefore ask that instructed verdict be granted with regard to that second count of the indictment.

THE COURT: Ms. Rolf, do you want to reply to that?

MS. ROLF: Well, Judge, Mr. Kortage testified that from the evidence that was presented to him, the name and identity was unknown to the grand jurors. And I submit to the Court that that is what we have alleged in the indictment, and that his testimony in that regard is sufficient to prove that element beyond a reasonable doubt.

He testified that he heard numerous cases during his term during the grand jury, and he may not remember specifically what efforts were performed to try to ascertain the identity of that person, but I submit to the Court that his testimony is sufficient to prove that element.

THE COURT: Okay. I'm reading the case, is why I'm quietly sitting here right now. It's the Payne case.

The question is a fact question. I suppose, of sufficiency, more than anything else, Mr. Lamb, whether or not the evidence by Mr. Kortage is sufficient to show that the grand jurors did not know the name of the thief. And—

MR. LAMB: Excuse me, Your Honor, if I could just point out that I believe I asked Mr. Kortage if a diligent effort was made to procure that name, and I believe he said he did not know. I believe that is what the record will reflect.

THE COURT: That's true. I recall that. However, he did say—and I don't remember the exact words, but I made some notes—that he did not hear any evidence who the thief was and the thief was not identified.

There's some distinction between this, our fact situation here at hand and the facts in the Payne case where, at least as I'm reading it right now, it appears in the Payne case that the name of the thief was known and the State, or the grand jury, perhaps, simply failed to inquire.

I think it's a very bothersome question Ms. Rolf.

I'm going to deny the defendant's motion for an instructed verdict at this time, Mr. Lamb, but again, you know, since I have the authority, you know, on your motion for new trial situation, I may have to look at it again, if the defendant—

MR. LAMB: I'd also like to cite, Your Honor, with regard to that, Cunningham v. State, which is 484 SW2d 906, which states reasonable diligence was concluded only after it was found that a member of the grand jury inquired of the investigating officer and they were unable to supply the name.

I submit to you that none of the evidence has been, has been shown in this case that they even questioned whether or not they knew the name of the officer, and thus, diligence was not shown.

THE COURT: Well, I think the question is whether or not they exercised diligence. The cases say that the grand jury must exercise diligence to determine the name of the—this witness. I'm not disputing that with you.

The question I have is whether or not the evidence the State adduced does in fact show that the grand jury exercised enough diligence to satisfy the cases.

I will deny the motion for instructed verdict at this time. I don't want to prejudice the defendant by doing that, although I may be in some respects. However, I'm not entirely happy with the situation.

But I'll deny the motion for instructed verdict at this time.

(Whereupon, the jury was returned into open court and the following proceedings were had, in the presence and hearing of the jury:)

THE COURT: So the record is clear, Ms. Rolf, when you rested, you rested in the case in chief, which I assume is on the new indictment. You didn't make any reference to the motion to revoke probation—

MS. ROLF: No.

THE COURT: —so you haven't rested on that; is that correct?

MS. ROLF: No.

THE COURT: I just wanted to make sure. Off the record.

(Whereupon, the court stood in recess until August 31, 1984, at which time the hearing was resumed and the following proceedings were had, in open court, out of the presence of the jury:)

MR. LAMB: Your Honor, now comes the defendant and so moves with regard to Cause Number F-84-91339-RL, State of Texas versus Romey Lynn Polk.

At this time, the defense would like to reurge its motion for instructed verdict. I would like to point out to the Court that the State has not proved all of the elements alleged in the indictment, and also there is an insufficiency of proof as alleged in the indictment.

And I would like to reurge the motion which I presented before after the State rested.

I should also like to point out that in reviewing Mr. Kortage's testimony, it states—he states clearly that he does not even recall hearing the case of Romey Lynn Polk before the grand jury, much less whether or not he exercised any due diligence at all.

And I would also point out that the questions which I believe as defense attorney for Mr. Polk which were necessary to be asked by the grand jury to fulfill the element in the indictment of "property was stolen by another whose name and identity is unknown to the grand jurors," question

which should have been proposed by members of the grand jury or the District Attorney in front of the grand jury is, "Do you know who stole the automobile in question?"

At that point, if the officer, the investigator, or whoever was the witness there, would have said, "I do not know," that might have satisfied the requirement.

However, in this case—and I'm sure that the grand jury transcript will point it out, and which I requested on our motion for the grand jury transcript prior to the commencement of this trial, that the question was never asked before the grand jury. At no time did any member of the grand jury ask, "Do you know who the name and identify of the person is who stole the automobile"; at no time was the question even asked.

And because of that, because of that lack of diligence—not only due diligence but any diligence at all—we would ask that an instructed verdict be granted as regards the second count of the indictment.

THE COURT: Thank you, Mr. Lamb. As you know, informally we have been arguing about this since we recessed yesterday afternoon, including all morning this morning. And I have read all the cases that I have been able to gather on it.

I believe my initial reaction yesterday is still appropriate and proper, even in the face of the Payne case.

I'm going to deny your motion for instructed verdict at this time and let the case go to the jury on the second count of the indictment and its lesser included offenses.

Perhaps, if the defendant is found guilty of any of the charges involved in the receiving and concealing count, there may be some authority between now and then that I can look at that will change my mind, but right now I believe we've exhaustively briefed it—all of us have—and I have made the decision I did.

So I deny your motion for instructed verdict.

MR. LAMB: At this time, Your Honor, as to objections to the Court's charge, the

defense would object to all mention in the Court's charge with regard to the theft receiving and concealing count, which would be applicable to page four, beginning with the second paragraph, and the fact that the defendant would object to any mention whatsoever with regard to lesser included offenses as well as the original offense with which he is charged with regard to the theft receiving—the count called receiving and concealing.

And that there is not enough evidence before this Court to consider that, and we would ask that the Court strike all reference to the theft receiving and concealing, the second count of the indictment.

THE COURT: Is your objection to the lesser includeds of the second count and objection to the second count grounded on the same grounds that your motion for instructed verdict is?

MR. LAMB: Yes, Your Honor.

THE COURT: Okay. Besides making a valid objection, you just don't want to waive any objection to your motion for instructed verdict; is that correct?

MR. LAMB: Sir?

THE COURT: Are you saying that there is no evidence to support the lesser includeds or they shouldn't be submitted because the second paragraph shouldn't be submitted?

MR. LAMB: Because the second paragraph should not—

THE COURT: Well, I'll overrule that, consistent with my other ruling on your motion for instructed verdict.

Because I would agree that if the second count should not be submitted, the lesser included should not be; but I think it should be, so therefore, I'm going to submit the lesser included.

(Whereupon, an off-the-record discussion was had, after which the jury was returned into open court, and the following proceedings were had, in the presence of the jury:)

\* \* \* \* \* \*

(Whereupon, the case was continued to September 17, 1984, at which time the hearing was resumed and the following proceedings were had, in open court:)

THE COURT: This is a case which, on a plea of not guilty before the jury, the jury having found the defendant guilty, the Court heard punishment evidence and the Court assessed the defendant's punishment at seven years' confinement in the Texas Department of Corrections.

The defendant has filed a motion for new trial, Mr. Lamb, which I have in front of me. And this hearing this morning will be the motion for new trial hearing.

MR. LAMB: Judge, I also filed a motion for new trial with regard to the probation revocation.

THE COURT: I don't have the case number to recite, but at the same time I heard the—or after I finished hearing the punishment evidence in this case, I concluded a hearing on a motion to revoke probation and revoked the defendant's probation and assessed punishment in that case at six years' confinement in the Texas Department of Corrections. So actually both those cases are before us this morning.

MR. LAMB: Yes, sir.

THE COURT: Mr. Lamb, I know there was quite a bit of discussion during the trial about various grounds of error before the Court that I committed.

Do you have anything in addition to present this morning?

MR. LAMB: Judge, I don't want to stress the other grounds which might be applicable on appeal, but with regard to the motion for new trial, I want to just reemphasize, with regard to the theft receiving and concealing, it is the defense contention that it was never proven up that an effort, a diligent effort, much less a due diligent effort, was made with regard to finding out who stole the automobile parts.

It was never brought up during the case in chief. And because of that, at that time the defendant urged a motion for instructed verdict which was denied, and we would reurge this on a motion for new trial, in that there was no evidence presented by— as required by certain cases, stating that it must be inquired in by the grand jurors

that—on theft receiving and concealing, that the person who stole the property was unknown. No such inquiry was made in this case. We would therefore ask that the motion for new trial be granted.

THE COURT: Mr. Lamb, before I give the State a chance to reply, this is one we thrashed out in my office, I believe, for probably one afternoon and the greater part of one morning. And admittedly, there is much to be said for the defendant's position in the case.

I don't have to give any reasons for what I'm doing, but so that Mr. Polk, at least, has the benefit of my belief, I believe that in a situation where the evidence on the whole of the case itself shows that the identity of the thief is unknown and would be unknown, that the grand jurors' lack of diligence, if there was any in this case, is excused to some degree.

I admit that there are cases against me, but there are some for me, so it's a close enough question that I made the ruling at the time and I gave it very careful thought, and I'm going to stick with my ruling on it, for better or for worse.

So I'm going to deny the motion for new trial in both cases.