**Nolan Brady KUTCH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–90–168–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 7, 1991.

Stanley G. Schneider, Houston, for appellant.

Mary Lou Keel, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction of the felony offense of injury to a child. Appellant pleaded not guilty and the jury found him guilty as charged and assessed punishment at 40 years imprisonment in the Texas Department of Criminal Justice and a $10,000 fine. In two points of error, appellant complains that there is insufficient evidence: (1) to show that the grand jury used reasonable diligence to determine the means used to commit the offense, and (2) to support his conviction because the state failed to disprove all other reasonable hy-

potheses except the guilt of appellant. We affirm.

The record reflects that on April 4, 1989, Crystal Cravens, a 22–month–old child, was left in appellant's care by her mother, Lisa Cravens. Appellant was Lisa Cravens' live-in boyfriend. Ms. Cravens left the apartment in the early afternoon to go to work. Appellant put the unconscious child in the back of his automobile sometime after 8:00 p.m. and drove to Humble to pick up Ms. Cravens at work. They then took Crystal to Humble Medical Center and she was transferred later that evening to Ben Taub Hospital in Houston.

The medical testimony at trial revealed that Crystal had been treated at Ben Taub the previous week for a seizure disorder. A CAT scan performed on March 29, 1989 revealed some bleeding in her brain from some type of head injury. The CAT scan performed on April 5, 1989, reflected a new, more severe injury to the child's head. A final CAT scan performed on April 10, 1989, revealed that her brain was severely swollen and that there had been considerable damage to the child's brain. The medical testimony also revealed that the most likely cause of Crystal's injury was some type of trauma to her head caused by a blow with a blunt object or severe shaking of her body. Crystal suffered paralysis on the left side of her body and injury to her eyes that could result in permanent blindness.

■ In his first point of error, appellant complains that there was insufficient evidence to show that the grand jury used reasonable diligence to determine the means used to commit the offense. As a general rule, the diligence of the grand jury must be proven by the state only after the evidence reveals that the means used to inflict injury was known or capable of being discovered. *See generally Polk v. State*, 749 S.W.2d 813, 817 (Tex.Crim.App. 1988); *Pichon v. State*, 756 S.W.2d 16, 19 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). Where, as here, the means used to inflict injury is known only to the assailant, no reasonable diligence could discover the actual means with any degree of certainty.

Thus, evidence of the grand jury's diligence in trying to determine that which is unknown or incapable of being discovered would be an exercise in futility. *See Polk*, 749 S.W.2d at 817. Also, there is no showing by appellant that the means was known or capable of being discovered. Appellate courts will not review the sufficiency of the evidence presented to the grand jury to determine whether an indictment is justified, nor will we go behind an indictment which appears legally valid. *Id.; Black v. State*, 735 S.W.2d 897, 899 (Tex.App.— Houston [14th Dist.] 1987, pet. ref'd).

■ Patricia Casey, a member of the grand jury, testified that the grand jury reviewed Crystal Cravens' medical records but they did not know what type of blunt object had been struck against her head. The medical testimony at trial did not reveal the blunt object that had been struck against the child's head. The medical testimony revealed only that the most likely cause of Crystal's injuries was a blow to the head with a blunt object. Because the means used to inflict the child's injuries never became known, we do not find a lack of due diligence by the grand jury in returning the indictment. We overrule appellant's first point of error.

■ In his second point of error, appellant claims that there is insufficient evidence to support his conviction because the evidence fails to disprove all other reasonable hypotheses except that of his guilt. In reviewing the sufficiency of the evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim. App.1989). This standard applies to both direct and circumstantial evidence cases. *Alexander v. State*, 740 S.W.2d 749, 757 (Tex.Crim.App.1987). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Penagraph v.*

*State,* 623 S.W.2d 341, 343 (Tex.Crim.App. 1981). A jury is entitled to accept one version of the facts and reject another or to reject any of a witness' testimony. *Id.*

David C. Carlyle, an emergency physician at Northeast Medical Center where the child was initially taken on April 4, 1989, testified that Crystal was having a seizure when she was brought into the emergency room. He stated that appellant told him that Crystal started to act strangely in the back seat of the car on the way to pick up her mother. He testified that her seizure was atypical because it appeared to be a focal seizure. The seizure involved only half her body which indicated that whatever was causing the seizure was arising from one place inside the brain.

Julie Parke, a pediatric neurologist at Baylor College of Medicine, examined Crystal when she was transferred to Ben Taub. She testified that the CAT scans of Crystal's brain revealed fluid outside the brain and some bleeding. She stated that the most common way blood gets into the brain to that extent is from some type of trauma. She testified that she did not find any evidence of an aneurysm or tumor in Crystal's brain nor did they find any other explanation for the seizures other than a trauma to the head or violent shaking. Dr. Parke's opinion was that there had been a significant trauma to the child's head because of the extent of the injury to the child's brain. She stated that the injury was more trauma than a child could possibly incur in a normal childhood environment.

Edith Schatte, a senior resident in ophthalmology at Baylor College of Medicine, testified that she examined Crystal on April 6, 1989, and that the child had a significant amount of blood in the retinas of her eyes. She stated that the blood was "new" blood and had not been in the child's eyes very long. · She stated further that it is unusual to see this type of injury in a child of Crystal's age except in the case of trauma to the head. She testified that the blood from Crystal's brain tracked forward into the retinas of her eyes. She stated that she could not say whether the damage

to the child's eyes was permanent but that the child would probably have decreased vision.

Lester Gerson, a specialist in pediatric radiology at Texas Children's Hospital, testified that he reviewed the CAT scans of Crystal's head. He stated that the CAT scan from March 29, 1989, indicated that there had been an injury to the child's head. The CAT scan revealed some bleeding in her brain but it was difficult for him to say what sort of injury had caused the bleeding. He stated that the CAT scan from April 5, 1989 reflected a new injury that was not present on the previous CAT scan. He said that the new injury had probably occurred within 24 hours of the time the CAT scan was taken. Dr. Gerson testified that the new injury was "pretty bad" because there was blood all around the child's brain. He stated that the CAT scan done on April 10, 1989, revealed that the child's brain was very swollen and that there was considerable injury to the brain itself. He testified that in his opinion the child could not have walked around after that injury because the injury would have rendered her unconscious. He said that the injuries were consistent with Battered Child Syndrome because of the multiple injuries to the child's head and the age of the child. He stated that a child of Crystal's age could not climb high enough or fall hard enough to inflict an injury as extensive as the one she sustained.

Todd Schmidt, a manager at Lisa Cravens' place of employment at the time Crystal was injured, testified that Lisa was at work from 2:30 p.m. until 9:00 p.m. on April 4, 1989.

Njeri Njoroge, a caseworker for Harris County Child Protective Services, testified that she interviewed appellant at Ben Taub Hospital on April 7, 1989. At that time, Crystal was in a coma. Appellant told her that he was the caretaker of the child and that he had a tendency to be impatient. He told Ms. Njoroge that Crystal started coloring on the walls and jumping on the couch between 3:00 p.m. and 5:00 p.m. and that he stopped her by making a grimacing face at her. He told her that he put the child

down for a nap at 6:00 p.m. and between 7:00 p.m. and 8:00 p.m. he tried to wake her but she was unresponsive. He then took the unconscious child and put her in the backseat of his automobile and drove to Humble to pick up Ms. Cravens. Ms. Njoroge testified that appellant acted very defensively during the interview even though she did not suspect child abuse at first, and he told her that she would have to prove "beyond a shadow of a doubt" that he had done anything to injure the child. Ms. Njoroge also learned that the child had been hospitalized previously for seizures and vomiting in the latter part of March 1989.

Viewing the evidence in the light most favorable to the verdict, it is clear that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of injury to a child. The evidence established that while Crystal was in appellant's care she was jumping around and coloring on the walls. She could not have done so after the trauma. The testimony showed that the child was unconscious later that evening and that appellant told two people two different stories: he told Ms. Njoroge she would not wake up after the nap, yet he told Dr. Carlyle that she was acting strangely in the back seat of the car. Dr. Gerson's testimony established that the severity of the child's injuries would have rendered her unconscious or, at least unable to move about. Therefore, the trauma was incurred after the sofa-jumping incident and before she was taken to her mother. We agree with the jury that there is no other reasonable hypothesis. Accordingly, we overrule appellant's second point of error and affirm the judgment of the court below.