IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-91-156-CR





LEROY HARDEMAN,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT



NO. 17,823, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING



 





PER CURIAM

 Over appellant's plea of not guilty, a jury found him guilty of theft (1) and assessed
his punishment, enhanced, at thirty-five years' imprisonment. We will affirm the conviction.

 In a single point of error appellant challenges the legal sufficiency of the evidence
to support the jury's finding of guilt. Essentially, appellant argues that the testimony of defense
witnesses, coupled with "inconsistencies" in the testimony of Constable Tommy Chamberlain,
creates a reasonable doubt as to appellant's guilt.

 In reviewing the sufficiency of the evidence to sustain the conviction, the standard
of review on appeal is the same for both direct and circumstantial evidence cases. The critical
inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); McGoldrick v. State, 682 S.W.2d 573,
577 (Tex. Crim. App. 1985). Questions regarding the sufficiency of the evidence must be
resolved in light of the charge which is given. Polk v. State, 749 S.W.2d 813, 815 (Tex. Crim.
App. 1988).

 The relevant portion of the charge recites:



Now bearing in mind the above and foregoing instructions, if you believe from the
evidence beyond a reasonable doubt, that the Defendant, Leroy Hardeman, on or
about the 7th day of July A.D., 1990, in the County of Milam, and State of Texas,
as alleged in the indictment, did then and there unlawfully appropriate property,
to-wit: an SA 200 Lincoln portable welder on shop made trailer with
oxyacetylene torch without the effective consent of Chuck Balch, the owner, with
intent to deprive the said owner of said property permanently, and that the value
of such property was then and there at least $750.00 or over and under the value
of $20,000.00, then you will find the Defendant guilty of Theft as charged in the
indictment and so say by your verdict, but if you do not so believe, or if you have
a reasonable doubt thereof, you will acquit the Defendant and say by your verdict
"Not Guilty."



I. THE EVIDENCE
 

A. The Evidence Most Favorable to the Prosecution


 Tommy Chamberlain is a constable in Milam County. He testified that on July 7,
1990, at approximately 10:30 p.m., he was driving west on Batte Street in Cameron in his marked
constable's vehicle. He met a red Dodge pickup-truck, pulling a trailer and welding machine he
recognized as belonging to Chuck Balch. Chamberlain decided to follow the vehicle, but when
he hit his brakes, he saw in his rear-view mirror that the pickup increased its speed. Chamberlain
made a U-turn, and radioed the dispatcher for backup because he felt the "people were running." 
Chamberlain testified that, initially, he thought the front left headlight was out, but later
determined that it was pointing down because of damage to the left side of the pickup.

 The vehicle turned right on College Street. Chamberlain lost sight of it, but later
caught up to the same vehicle stopped on the west side of Walnut Street in the "Dutchtown" area
of Cameron. There were two males outside the pickup. Chamberlain recognized appellant
standing at the right rear passenger side of the vehicle. He had seen appellant numerous times
over the last twenty years and knew him by name. The second male was bent over the trailer
trying to unhook it from the truck. Chamberlain testified that he got enough of a look at the
second man to know he would recognize him if he saw him again.

 Chamberlain got out of his vehicle and approached the two men, stopping
approximately eighteen inches from appellant. Chamberlain testified that he asked Hardeman
what he was doing with the trailer and welding rig. Appellant replied, "Old home boy [told them]
to bring it over here and park it by this yard." Chamberlain told the men he needed some
identification. Appellant told his companion, "hurry up and get loose from this like old home boy
told us to so we can go," to which Chamberlain responded, "No, you're not going anywhere until
I get some identification."

 Chamberlain testified that he did not have his flashlight with him and turned to go
back to his vehicle to get it. As he walked back to his vehicle, he heard the sound of gravel
flying. He turned around and saw that the men had unhooked the trailer from the pickup. As
they were leaving the scene, Chamberlain observed that the man he had seen bent over the trailer
tongue grabbed the tailgate of the pickup and flopped over into its bed. Chamberlain testified that
he radioed for backup again, lost sight of the pickup and broadcast that the suspects were two
black males, one of whom was Leroy Hardeman. Ultimately, Chamberlain received a radio call
from Deputy Jim Winn saying he had a red Dodge pickup stopped on Farm to Market Road 486
south of Pettibone. Chamberlain drove to this location and found Deputies Winn and West, the
red Dodge pickup, appellant and the same man Chamberlain had seen with appellant by the side
of the road on Walnut Street. The men were placed under arrest and transported to the sheriff's
office. Appellant's companion was subsequently identified as Albert Young, appellant's brother. (2)

 Chuck Balch is the owner of R&S Welding and Millwrights on Batte Street in
Cameron. Balch testified that late on the night of July 7, 1990, he received a telephone call telling
him his welding machine had been taken and where he could pick it up. Balch testified that his
welding rig consisted of a single axle trailer with a 200 amp S.A. 200 Lincoln welding machine
and various materials, bottles, gauges, tools, and a torch used for welding purposes. Balch kept
the rig parked in front of his welding shop. He valued the welding rig unit at $6000.00. Balch
testified that he was the owner of the welding rig and that he did not give appellant or Albert
Young permission to possess it or transport and leave it on Walnut Street.

 Charlie West is a Milam County Deputy Sheriff. He testified that on the night of
July 7, 1990, he heard Chamberlain's radio call looking for a pickup involved in the theft of a
welder. West subsequently heard a radio call from Deputy Winn saying he had spotted a pickup
fitting Chamberlain's description on Farm to Market Road 486 and had stopped the vehicle. West
went to the location where the vehicle had been stopped and found Winn with appellant and
Young. West identified appellant on sight, having known him ten to eleven years. The deputies
held the suspects until Chamberlain arrived.



B. Other Evidence


 To rebut the State's case, appellant relied on the defense of mistaken identity. 
Appellant's sister, Thelma Moore, testified that her sister, Molly Young, was moving back to
their deceased mother's house in Cameron. On July 7, 1990, appellant was taking Molly's
furniture from Thelma's home in Houston to the Cameron house. Thelma testified that the drive
took approximately two and one-half hours. She testified that appellant drove her truck, that the
driver's side was jammed requiring entry through the passenger side of the vehicle. She denied
anything was wrong with the left front headlight. Thelma testified that appellant left Houston at
approximately 7:00 p.m. on July 7, 1990, accompanied by his brother Albert Young and his
cousin Mike Anderson. She also testified that she received a telephone call at approximately
11:00 p.m. informing her that appellant had been arrested and her truck had been impounded.

 John Henry Wilson is appellant's uncle. He testified that at approximately 9:00
p.m. on July 9, 1990, he was sitting in the front yard of appellant's deceased mother's house in
Cameron when appellant and Albert arrived in a pickup truck with household appliances in the
back. Wilson observed that the two men got out of the truck on the passenger side of the vehicle. 
Wilson testified that appellant and Albert took twenty to twenty-five minutes to unload the truck,
visited with him briefly, and left between 9:50 and 10:00 p.m to go to the "black park" on 12th
Street. Wilson was able to observe the two men drive down to the end of the street and turn right
toward the park. Wilson did not know if appellant and Albert actually went into the park because
he could no longer see them.

 Molly Young, appellant's sister, testified that on July 7, 1990, she lived in Houston
and asked appellant to move some furniture for her to Cameron in her sister's truck. She also
testified that Albert Young and Mike Anderson accompanied appellant and that the three men left
at approximately 7:00 p.m. that evening.

 Albert Young, appellant's brother and a codefendant, testified that on July 7, 1990,
he and appellant left Houston around 7:00 p.m. to deliver their sister's furniture to Cameron. 
Mike Anderson went with them. They dropped Anderson off at his mother's house in Cameron,
then took the furniture to their mother's house, arriving between 9:00 and 10:00 p.m. Albert
testified that it took them one and a half to two hours to unload the truck. Then he and appellant
went to the 12th Street park and stayed approximately one hour, leaving between 10:30 and 11:00
p.m. Next they drove out Highway 36 to see a Mr. Jones about delivering some hay for their
horses. Albert testified that Jones was not home. The two men decided to drive to a second
man's house to get some eggs, but they were stopped before they reached the egg-man's house. 
Albert testified that he and appellant were not on Batte Street that evening, did not go to
Dutchtown, did not know Charles Balch, did not steal Balch's welder, and did not even see a
welder that night.

 The State called Chamberlain as a rebuttal witness. Chamberlain testified that he
recognized Young as the man who had been unhooking the welder from the pickup truck on
Walnut Street on the night of July 7, 1990.



II. DISCUSSION


 The jury, or trial judge in a trial before the court, is the sole judge of the credibility
of the witnesses and may accept or reject any part or all of the testimony given by the State or
defensive witnesses. Minx v. State, 615 S.W.2d 748, 749 (Tex. Crim. App. 1981). The jury was
free to believe the testimony of the State's witnesses and to disbelieve the testimony of the
defense's witnesses. 

 Chamberlain's testimony establishes that appellant and Albert appropriated Balch's
welding rig when they exercised control over it by transporting it from Balch's property to the
Walnut Street location. Chamberlain testified that when appellant was confronted on Walnut
Street, he did not deny that he had brought the welder there, but instead said that he had been
asked to leave it there by "old home boy," gesturing in the direction of Balch's shop. The jury
was also free to believe Balch's testimony that he did not consent to their possessing or
transporting his welding rig, and that the rig was valued at $6000.00. 

 The foregoing testimony would also support the jury's implied finding that
appellant and Albert intended to deprive Balch of his property. The jury could conclude from
Chamberlain's testimony that appellant and Albert intended to steal the rig because the two began
"running" when Chamberlain passed them in his marked constable's vehicle, and because they
sped away after unhooking the trailer at the Walnut Street location following Chamberlain's
request for identification. 

 Finally, Chamberlain's identification of appellant was unequivocal. He testified
that he had seen appellant numerous times and known him for twenty years. He stood within two
feet of appellant when he asked him what he was doing with the welding rig. Reviewing the
evidence in the light most favorable to the prosecution, we believe a rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. The evidence is
sufficient to sustain the conviction. Appellant's point of error is overruled.



III. CONCLUSION


 The judgment of conviction is affirmed. 



[Before Chief Justice Carroll, Justices Aboussie and Kidd]

Affirmed

Filed: January 29, 1992

[Do Not Publish]

1. [1] Tex. Penal Code Ann. § 31.03(e)(4)(A) (Supp. 1992).
2. [2] The familial relationships are recited as they appear in the record, the uncommon surnames
notwithstanding.