**Daniel Wayne WALKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–87–00158–CR.**

Court of Appeals of Texas, Tyler.

May 12, 1989.

Discretionary Review Granted Aug. 30, 1989.

Rehearing Denied Oct. 23, 1991.

Daniel Wayne Walker, Rosharon, pro se.

Jack Skeen, Jr., Dist. Atty., Tyler, for appellee.

COLLEY, Justice.

Daniel Wayne Walker was convicted by a jury of burglary of a building.[1] The trial judge assessed his punishment[2] at 40 years. The record reveals that on September 4, 1986, a K–Mart store located on Northwest Loop 323 in Tyler was burglarized. Entry was gained by breaking the glass doors located on the west side of the building. Two television sets and a number of firearms were removed by the burglars. The gun case from which the firearms were taken had glass doors which were broken out. We will reverse and order an acquittal.

Although Walker was represented at trial by appointed counsel, he brings this appeal pro se. Walker asserts six points of error. By his first point he contends that the evidence is insufficient to sustain his conviction. He claims under his second point of error that the indictment in the cause is fundamentally defective. Under his third point of error he asserts that the visiting judge who heard his case had no authority to do so. He contends by his fourth point of error that the court erred in instructing the jury on the law of parties. By his fifth point, he alleges that the court erred in "admitting testimonie [sic] of extraneous offense during trial." Finally, by his sixth point of error, he argues that the "trial court" erred in "sending false documents to [this court] under false pretense."

The circumstantial evidence is fairly summarized as follows. Two of Walker's right-hand palm prints were found on the side and on the screen of one of the television sets taken in the burglary. The television was found by an officer outside the building. The evidence shows that at a time after the police had been informed that the palm prints had been so identified, an arrest warrant was issued for Walker.

Police Officer Richard Sanders apprehended Walker who, when asked by Sanders if he was Daniel Wayne Walker, replied that his name was Fred Walker, Daniel Wayne Walker's brother. Sanders then asked Walker if he would voluntarily accompany him to the Tyler Police Station and submit his fingerprints for comparison to known prints of Daniel Wayne Walker. Walker agreed, but before they left the area where Walker was apprehended by the officer, a black passenger in a passing vehicle "leaned out of the window and hollered 'Hi Danny.'" Officer Sanders then arrested Walker and took him to the police station where he was advised that he was under arrest for the burglary of a building. The officer testified that he did not identify the particular building that had been burglarized. Thereafter, Sanders transported Walker to the Smith County Jail to book him in as a prisoner. While the paper work was being processed, an unidentified black man sat down beside Walker at the jail and asked Walker why he was there. Walker initially responded that he was charged with burglary, whereupon the black male asked Walker, "What burglary?" To this question Walker answered, "They got me in here on the burglary of K–Mart up north but I didn't do it."

The record also reveals that the investigating officers lifted three sets of fingerprints from surfaces at the burglary scene. A comparison of these latent prints was made to known prints of Walker and three other suspects in the case. According to the testimony of the State's fingerprint expert, the latent prints did not match the known prints of Walker or the other suspects. Additionally, the evidence shows that some unidentified person or persons suffered severe cuts while breaking the glass doors of the gun case from which the firearms were taken.

■ We have carefully examined the indictment[3] in this cause and find that it

---

**1.** Under Tex.Penal Code Ann. § 30.02(a)(1) (Vernon 1974), hereinafter referred to as section 30.02.

**2.** Punishment was enhanced by two prior convictions.

**3.** Omitting the formal parts, the indictment reads:

correctly charges the offense of burglary of a building as that offense is defined by section 30.02. Walker's second point of error is overruled.

■ Walker's trial was presided over by the Honorable Richard Davis who, at the time of trial, as we judicially notice, was the duly elected and sitting judge of the 294th District Court of Van Zandt and Wood Counties. The record does not contain an assignment of Judge Davis to this case or to the 241st Judicial District Court of Smith County pursuant to Tex. Gov't Code Ann. § 74.056(a) (Vernon Supp.1988); nor does the record contain any evidence that he exchanged benches with the elected judge of the 241st District Court pursuant to Tex. Const. art. 5, § 11. Walker, however, did not object to, or challenge, the right or authority of Judge Davis to sit in his case. He therefore waived his right to complain thereof in this court. Under the circumstances, a presumption obtains that Judge Davis was either assigned to the 241st District Court pursuant to Texas Government Code provisions or had exchanged benches pursuant to the Texas Constitution. *Floyd v. State,* 488 S.W.2d 830, 832 (Tex.Cr.App.1972), and *Woods v. State,* 569 S.W.2d 901, 903 (Tex.Cr.App. 1978). The third point of error is overruled.

■ Walker complains under his fourth point of error that the court reversibly erred by including in the court's charge at the guilt-innocence phase an abstract charge on the law of parties. The charge complained of, and objected to at trial, reads:

All persons are parties to an offense who are guilty of acting together in the commission of an offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another

for which he is criminally responsible, or by both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

The State argues in response that since the law of parties was not applied to the facts of the case, and since the evidence did not require the charge on the law of parties, no error exists. If error does, however, exist, the State alternatively argues that such error is harmless under *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Cr.App. 1984). This argument necessarily assumes *that the abstract charge* is not effective to authorize a jury to convict Walker if they found that Walker was criminally responsible for the burglary committed by other persons under Tex.Penal Code Ann. § 7.01(a) and § 7.02(a)(2) (Vernon 1974), which are embodied in the abstract charge.

We are persuaded that the circumstantial evidence raises the fact issue of whether Walker was guilty as a party to the offense under sections 7.01(a) and 7.02(a)(2) of the Texas Penal Code. Hence the court did not err in overruling Walker's objection to charge on "the law of parties."[4] The fourth point of error is overruled.

With respect to Walker's fifth point of error, we have carefully reviewed the record and find no testimony or evidence introducing any extraneous offense, or any objection relating thereto. The point of error is overruled.

Walker's sixth point of error does not relate to any proceeding before the trial court or jury during the criminal trial itself. It is patently unmeritorious and is overruled.

[T]hat on or about the 4th day of September, 1986, and anterior to the presentment of this Indictment, in the County and State aforesaid, DANIEL WAYNE WALKER did then and there, intentionally and knowingly, without the effective consent of WILLIAM PARKS, the owner thereof, enter a building not then and

there open to the public, with intent to commit theft; . . . .

4. Although the charge was incomplete, Walker did not object to the court's failure to apply the law of parties to the facts presented.

We now address Walker's first point of error, whereby he claims that the evidence is insufficient to sustain his conviction. In so doing, we must "measure" or evaluate the evidence in light of the court's entire charge. *Boozer v. State,* 717 S.W.2d 608, 610–611 (Tex.Cr.App.1984); *Benson v. State,* 661 S.W.2d 708, 714 (Tex. Cr.App.1982). It is clearly established that the trial court must "fully instruct the jury on the law applicable to the case and to apply[5] that law to the facts presented. Article 36.14 Vernon's Ann.C.C.P.; *Rider v. State,* 567 S.W.2d 192 (Tex.Cr.App. 1978)." (Citations omitted.) *See Jackson v. State,* 633 S.W.2d 897, 899 (Tex.Cr.App. 1982).

In *Romo v. State,* 568 S.W.2d 298, 302–304 (Tex.Cr.App.1978), the defendant was indicted for murder. The indictment charged that he "did ... intentionally and knowingly cause the death of an individual ..., by shooting him with a gun...." The "application" paragraph of the court's charge tracked the indictment, authorizing the jury to convict Romo only as the primary actor. In a subsequent paragraph, the court abstractly instructed the jury on the law of parties pursuant to Tex.Penal Code Ann. § 7.01(a), (b) and § 7.02(a)(2). Judge Odom, who wrote the opinion on Romo's motion for rehearing, noted that "[n]o evidence supported submission of the case on the theory that [Romo] was the primary actor." *Id.* at 299. Judge Odom declared for the court that the trial court's failure to apply the law of parties to the facts constituted "fundamental reversible error in the ... charge...." *Id.* at 300. The State's motion for rehearing, however, was then granted with a plurality opinion by Judge Dally. After deciding that, ab-

sent an objection on the part of appellant, the failure of the trial court to apply the law of parties to the facts is not reversible error, the *Romo* court proceeded to consider and overrule Romo's point of error "that the evidence is insufficient to show [Romo's] criminal responsibility for the acts of the co-defendant who shot the deceased." *Id.* at 303. Since *Romo* is a pre-*Benson* case, its ruling on the insufficiency point did not take *Benson*'s rule into account. To the contrary, the *Romo* court recited the facts and circumstances proved by the State by direct evidence, and, according to the opinion, those facts and circumstances were ample to support Romo's conviction as a party.

For purposes of our opinion, we must assume that *Benson* and *Boozer* do not permit this Court to measure the sufficiency of the evidence in the case before us on a standard contrary to the ones enunciated therein.

In *Garrett v. State,*[6] 642 S.W.2d 779, 781 (Tex.Cr.App.1982) (*Garrett I*), the court followed *Romo* and concluded that circumstances in which the trial court abstractly charged the jury on the law of transferred intent,[7] but did not apply the provisions thereof to the facts of the case, did not, in the absence of an objection by Garrett, "[constitute] a fundamental defect requiring reversal." *Id.* at 781. As a result of that holding, the court reversed the judgment of the San Antonio Court of Appeals and remanded the case to that court. On remand, the San Antonio Court, in consideration of Garrett's point of error challenging the sufficiency of the evidence—raised for the first time by an amended brief following remand, reversed the judgment

---

5. The paragraph of the charge applying the law to the facts reads:

> 5.
> Now if you find from the evidence beyond a reasonable doubt that on or about the 4th day of September, 1986 in Smith County, Texas, the defendant, DANIEL WAYNE WALKER, did then and there, intentionally or knowingly, without the effective consent of WILLIAM PARKS, the owner thereof, enter a building not then and there open to the public, with intent to commit theft, then you will find the defendant guilty as charged.

> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

6. Like *Romo,* a pre-*Almanza* and pre-*Benson* case.

7. Pursuant to Tex.Penal Code Ann. § 6.04 (Vernon 1974), hereinafter referred to as section 6.04.

of the trial court and ordered an acquittal. *Garrett v. State*, 656 S.W.2d 97, 101 (Tex. App.—San Antonio 1983), *judgmt of acquittal aff'd, Garrett v. State*, 749 S.W.2d 784, 795 (Tex.Cr.App.1986) (*Garrett II*). The San Antonio Court, relying on *Benson* and *Garrett I*, concluded that since the sufficiency of the evidence must be assessed without consideration of the provisions of section 6.04, there was no evidence that Garrett was aware of the nature of her conduct, that the circumstances existed, or that her conduct in firing a rifle would with reasonable certainty cause the death of the deceased. *See* Tex.Penal Code Ann. §§ 19.02(a)(1) and 6.03(b) (Vernon 1974). Otherwise stated, the court of appeals, looking to *Benson* and *Garrett I*, determined that the abstract charge on transferred intent was ineffective to authorize the jury to convict Garrett on that theory.

The original opinion in *Garrett II*, written by Judge Clinton, interprets *Benson* to hold that the sufficiency of the evidence must be tested solely in light of the paragraph of the trial court's charge applying the applicable law to the facts proved by the State. *Benson*'s rule, according to Judge Clinton, exists because that paragraph fixes the authority of the jury to convict, and instructs the jury as to which specific facts they must find to be true, beyond a reasonable doubt, before they can convict the accused of the involved offense. *Garrett II*, 749 S.W.2d at 788. However, in Judge Campbell's opinion on the State's motion for rehearing in *Garrett II*, there is language which contradicts Judge Clinton's interpretation of *Benson*. On the State's motion for rehearing, the court wrote:

> A different concern raised by [this case], although it is not mentioned in the State's motion for rehearing, is its possible effect on *subsequent cases*. A close inspection of [the original opinion in this case] reveals that it is a product of an unusual set of circumstances, illustrating the tension between pre- and post-*Almanza* analysis, which have created a result that appears to be something it is not. *At first blush, this case seems to require that a measurement of the sufficiency of the evidence be limited to a sole consideration of the application paragraph of the jury charge. This would be misapplication of the rule enunciated in Boozer v. State, 717 S.W.2d 608 (Tex.Cr.App.1986); Ortega v. State, 668 S.W.2d 701 (Tex.Cr.App.1983); and Benson v. State, 661 S.W.2d 708 (Tex.Cr.App.1983). Boozer, Ortega, and Benson hold that sufficiency of the evidence be measured against the jury charge, which we interpret to mean entire charge.*

*Garrett II*, 749 S.W.2d at 802–803 (emphasis ours, footnote omitted). In footnote 2 of 749 S.W.2d at 803, the *Garrett II* court states that it was bound by "the law of the case" [8] declared in *Garrett I*, and was thereby constrained to so hold, and that "the question of *what theory* the State must use to prove [Garrett's] guilt may not be relitigated." *Garrett II*, footnote 2 (emphasis ours). It is noteworthy that the author of the original opinion joined Judge Campbell's opinion in *Garrett II*. The last word of *Garrett II* is that *Benson–Boozer* requires the sufficiency of the evidence to be measured in light of the entire charge, not just the paragraph applying the law of the case to its particular facts. Thus, in testing the sufficiency of the evidence in the case before us, we follow *Garrett II* and look to the entire charge in determining Walker's first point of error.

 Unlike *Garrett II*, in which the abstract charge on the law of transferred intent related solely to the conduct of the defendant and her mental state at the time of the killing, our case involves an abstract charge on the law of parties under which Walker will be subjected to criminal responsibility for the conduct of other unidentified parties if the abstract charge is sufficient to authorize the jury to convict him on that theory. Before Walker can be convicted as a party to the offense, the jury must first find from the evidence beyond a reasonable doubt that another person or

---

**8.** Relating to the implied holding of *Garrett I* that the sufficiency of the evidence must be measured solely in conformity with the charging paragraph which applies the law to the facts.

other persons committed the offense. Neither the abstract charge nor any other instruction contained in the court's charge expressly so instructs the jury. Hence, the charge does not authorize the jury to convict Walker as a party to the offense. Therefore, applying *Benson, Boozer* and *Garrett II*, we must determine whether the circumstantial evidence is sufficient to support Walker's conviction on the theory that he, as a primary actor, committed the burglary.

■ Under applicable case law, identification of a defendant by fingerprint testimony is not conclusive. *E.g. Caudillo v. State*, 167 Tex.Cr.R. 147, 318 S.W.2d 891, 892 (1958). If under the circumstances of the particular case a reasonable hypothesis exists which is inconsistent with the defendant's guilt, then the evidence is insufficient to support a guilty verdict. Otherwise stated, "if the evidence [viewed in the light most favorable to the verdict] supports an inference other than the guilt[9] of the [accused], a finding of guilt beyond a reasonable doubt is not a rational finding." *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex. Cr.App.1983).

■ The circumstances before us are quite different from those presented in *Grice v. State*, 142 Tex.Cr.R. 4, 151 S.W.2d 211 (1941). In *Grice*, a thumb print was lifted from a glass pane removed by the burglar from a door through which the burglarious entry was made. A portion of that print was impressed on a part of the glass which had been previously covered by a molding removed by the burglar at the time of the offense. The *Grice* court concluded that the incriminating fingerprint "was, of necessity, made ... at the time of the entry." *Id.* 151 S.W.2d at 213. That court further concluded:

> that where the evidence, as here, shows the finger print[10] found at the scene of the crime was left there by the criminal at the time the crime was committed, thereby excluding the hypothesis that it might have been placed there innocently

prior to or subsequent to the commission of the crime ... that such evidence satisfies the law and excludes every reasonable hypothesis save guilt of the accused. *Grice*, 151 S.W.2d at 222.

In the instant case, Walker's palm prints were lifted from the television set found *outside* the K–Mart building next to a fence which surrounded the garden area grounds. A reasonable inference assuredly arises from that evidence that Walker, although he never entered the building, carried the property from just outside the doorway of K–Mart to the location where it was first found by the officers.

The other evidence relied on by the State to convict Walker consisted of the following: He lied to Officer Sanders; following his arrest he told the unidentified black male that he was charged with the K–Mart burglary, demonstrating that he had guilty knowledge of the burglary; and that some of the stolen property was found at a location between the K–Mart store and Walker's home. Testimony was given that fingerprints, broken glass, and quantities of blood were found at the crime scene, all of which were probative of the fact that one or more unidentified persons participated in the burglary. Aside from the palm-print evidence, however, no other facts were introduced which tended to place Walker at the scene of the burglary at or near the time of its commission. Walker did not testify, and no other evidence was presented which tends to show that Walker's palm prints could have been impressed on the television set before or after the commission of the offense.

Walker's conduct in lying to Sanders and his personal "guilty" knowledge of the K–Mart burglary certainly supports his complicity in the offense, whether as a party or as a primary actor. If the charge had authorized the jury to convict him as a party *or* as a primary actor, we would have no difficulty in concluding that rational jurors could have found each essential element of the offense beyond a reasonable

---

9. "Guilt" in this case, means guilt as a primary actor.

10. Identified as that of the accused.

doubt. Based on the circumstances presented, however, and the jury's limited authority under the court's charge, we are persuaded, viewing the evidence in the light most favorable to the verdict, that a reasonable inference arises from that evidence that other persons committed the burglary and that Walker aided and assisted them,[11] and thus Walker, if guilty, was guilty only as a party.

 At trial, the State made no request that the law of parties be applied to the facts of the case; neither did the State object to the court's failure to do so. Hence, the unobjected to error of the trial court in failing to apply the law of parties to the facts cannot be said to transform the insufficiency of the evidence to mere "trial error" that may require reversal, but not acquittal, under jeopardy's rule. *Boozer*, 717 S.W.2d at 611, 612; *Ortega v. State*, 668 S.W.2d 701, 704–705 n. 10 (Tex.Cr.App. 1983) (opinion on original submission).

The judgment is accordingly reversed, and an acquittal is ordered. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

---

**11.** Indeed, the State so argued to the jury at the guilt-innocence phase.